STATE v. GARVICK

[98 N.C. App. 556 (1990)]

---

STATE OF NORTH CAROLINA v. GEORGE ALAN GARVICK

No. 893SC296

(Filed 5 June 1990)

1. **Automobiles and Other Vehicles § 126.3 (NCI3d) — breathalyzer — second test — steps not required to be repeated — constitutional**

The trial court did not err in a prosecution for driving while impaired by denying defendant's motion to suppress the results of a breathalyzer test because the testing regulations adopted by the Commission of Health Services did not satisfy the requirement in N.C.G.S. § 20-139.1(b3) for duplicate sequential tests. That statute does not require two chemical analyses

but merely the testing of at least duplicate samples. The purpose of sequential testing is to assure the accuracy of the readings and to assure that factors outside the control of the state and the defendant do not affect the result; shutting down the instrument, adding a new ampul, and restarting from the beginning would not accomplish either of those purposes.

**Am Jur 2d, Automobiles and Highway Traffic §§ 305-307, 375-377, 380.**

2. **Automobiles and Other Vehicles § 126.3 (NCI3d) — breathalyzer — subsequent tests — time period**

The trial court did not err in a prosecution for driving while impaired by denying defendant's motion to suppress breathalyzer results because the use of the words "as soon as feasible" in the Commission Regulations is not time specific as required by N.C.G.S. § 20-139.1(b3)(1). Regulation .0336 provides a checklist of procedures that must be followed to insure accurate test results. By using the words "as soon as feasible," the regulation requires the operator to obtain a breath sample as soon as he can follow the checklist and, at the same time, this standard provides the operator with the flexibility needed to assure that the checklist is carefully followed.

**Am Jur 2d, Automobiles and Highway Traffic §§ 305-307, 375-377, 380.**

3. **Automobiles and Other Vehicles § 126.3 (NCI3d) — breathalyzer — second test — distinctions based on first test results — not unconstitutional**

The trial court did not err in prosecution for driving while impaired by denying defendant's motion to suppress breathalyzer results on the ground that the Commission's Regulations unconstitutionally create three classes of people: those whose first test reading is .20 or more and who receive a duplicate test, those whose first test reading is .19 or less and who receive another test which is not a duplicate, and those whose reading is between .19 and .20 who are not mentioned. No gap regarding test results between .19 and .20 exists because the final result is rounded to the lower reading. Even though those who test .19 or less receive a second test without a new verification of the calibration of the instrument and a new test of the ampul, there is no unconstitutional

STATE v. GARVICK

[98 N.C. App. 556 (1990)]

classification between different groups because all individuals arrested for driving while impaired who are tested under the model 900 breathalyzer are given the same initial test; the regulations merely treat the same group of people in a different way depending on the results of this first test. Moreover, even if the different procedures followed when the initial test results differ did create classifications subject to the equal protection clause, Regulation .0336 is not unconstitutional because the distinction between the two groups is based on the scientific theory of the breathalyzer and is not capricious, arbitrary or unjust.

**Am Jur 2d, Automobiles and Highway Traffic §§ 305-307, 375-377, 380.**

4. **Evidence § 48.1 (NCI3d)— DWI—witness on biochemistry and spectrophotometry—not qualified as expert**

The trial court did not err in a DWI prosecution by failing to certify defendant's chemistry professor as an expert where the witness admitted on voir dire that he had never run a breathalyzer test, had not conducted and was not aware of any scientific experimentation with the breathalyzer to substantiate that a smudge would affect the accuracy of the reading, as he intended to testify; there was no evidence in the record that the breathalyzer was administered improperly; and all parties stipulated that the chemical analysis of defendant's breath was conducted in accordance with the regulations.

**Am Jur 2d, Automobiles and Highway Traffic §§ 305-307, 375-377, 380.**

5. **Evidence § 18 (NCI3d)— DWI—demonstration of breathalyzer—defendant required to state in open court reasons for demonstration**

The trial court did not err in a DWI prosecution by requiring defendant to state his reasons for a demonstration of how a chemical analyst inserted an ampul into the breathalyzer machine. Although the purpose of the demonstration was to show that the analyst had to touch the ampul in such a way that he left smudge marks and fingerprints on the ampul and the breathalyzer operator subsequently stated that he needed to get a paper towel before attempting the demonstration, there was no evidence presented or offer of proof that a smudge would affect a breathalyzer reading.

Am Jur 2d, Automobiles and Highway Traffic §§ 305-307, 375-377, 380.

6. **Criminal Law § 903 (NCI4th)— DWI—submission of two-pronged verdict denied—unanimity not denied**

The trial court did not err in a prosecution for driving while impaired in its instructions to the jury on the offense of DWI and in failing to provide the jury with defendant's requested two-pronged verdict. The unanimity requirement was not violated because driving while under the influence of an intoxicating substance and driving with an alcohol concentration of .10 or more are separate ways by which one can commit the single offense of driving while impaired.

Am Jur 2d, Trial §§ 592, 713, 716.

7. **Automobiles and Other Vehicles § 129.3 (NCI3d)— DWI—request for instructions—given in substance**

The trial court did not err in a prosecution for DWI by denying defendant's requested jury instructions since those instructions were given in substance.

Am Jur 2d, Trial §§ 592, 713, 716.

Judge GREENE concurring in part and dissenting in part.

APPEAL by defendant from judgment entered 19 October 1988 by *Judge James R. Strickland* in CRAVEN County Superior Court. Heard in the Court of Appeals 11 October 1989.

On 20 February 1988 defendant was arrested and charged with driving while impaired in violation of G.S. 20-138.1. At the police station, defendant submitted to a chemical analysis of his breath at the request of the charging officer. The first sample of defendant's breath was collected at 1:21 a.m. and yielded a test result of 0.11. The second sample of defendant's breath was collected at 1:27 a.m. and yielded a test result of 0.12.

At trial, all parties stipulated that the chemical analysis of defendant's breath was conducted according to all the rules and regulations of the North Carolina Department of Human Resources, Division of Health Services, by a certified chemical analyst. The Smith and Wesson breathalyzer model 900 was used to perform the test. Defendant moved to suppress the results of the breathalyzer test on the basis that the regulations governing operational pro-

STATE v. GARVICK

[98 N.C. App. 556 (1990)]

cedures for breathalyzer machines promulgated by the Commission for Health Services (herein "the Commission") found in Regulation 07B.0336 of Title 10 of the North Carolina Administrative Code fail to comply with the legislative mandate of G.S. 20-139.1(b3) and G.S. 20-139.1(b3)(1).

Defendant's motion to suppress the results of the breathalyzer test was denied at trial both in the District Court and on appeal to the Superior Court. From judgment entered on the verdict, defendant appealed to this Court.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Isaac T. Avery, III, for the State.*

*Kennedy W. Ward, P.A., by Kennedy W. Ward, for defendant-appellant.*

PARKER, Judge.

Defendant brings forward five assignments of error. In his first assignment of error, defendant contends that the trial court erred by denying his motion to suppress the results of the breathalyzer test. Defendant's second assignment of error is that the trial court erred in denying expert status to defendant's witness, Jonathan Pharr. Defendant's third assignment of error is that the trial court erred by requiring defendant's counsel to reveal the purpose of his cross-examination in the presence of the State's witness. In his fourth assignment of error, defendant argues that the trial court erred by instructing the jury on the offense of driving while impaired and in failing to provide the jury with defendant's requested two-pronged verdict. Defendant's fifth assignment of error is that the trial court erred in denying his requested jury instructions.

[1] Defendant first argues that his motion to suppress the results of the breathalyzer test should have been granted because the testing regulations adopted by the Commission are both invalid and unconstitutional. In support of this argument, defendant contends that the requirement for duplicate sequential breath samples in G.S. 20-139.1(b3) and the time requirement for the second and subsequent samples in G.S. 20-139.1(b3)(1) have not been satisfied in the regulations.

General Statutes Chapter 20, Article 3, provides as follows:

Sequential Breath Tests Required. — By January 1, 1985, the regulations of the Commission for Health Services governing the administration of chemical analyses of the breath must require the testing of at least duplicate sequential breath samples. Those regulations must provide:

> (1) A specification as to the minimum observation period before collection of the first breath sample and the time requirements as to collection of second and subsequent samples.

G.S. 20-139.1(b3)(1). With regard to duplicate sequential breath samples, the Commission adopted ten requirements "to be followed in using the Breathalyzer, Models 900 and 900A." N.C. Admin. Code tit. 10, r. 7B.0336 (herein "Regulation .0336"). Requirement (1), steps (a) through (k), provides for the verification of instrumental calibration and the replacement and testing of the ampul used in the breathalyzer. Requirements (2) through (10) set out the procedure for the remainder of the test. The guidelines for determining when to perform each requirement read as follows: "If the alcohol concentration is 0.19 or less, repeat steps (2) through (10) as soon as feasible. If the alcohol concentration is 0.20 or more, repeat steps (1) through (10) as soon as feasible."

Defendant argues that the tests required by the regulations do not give a person in his position with a test result of 0.19 or less the benefit of a duplicate test because under Regulation .0336, the first test is a complete test, requiring the breathalyzer operator to follow requirements (1) through (10), whereas the second test requires only requirements (2) through (10), and is, therefore, not a complete test.

Defendant contends that requirement (1), which provides for verifying the calibration of the instrument and testing the ampul, is the primary safeguard to insure that the instrument is working properly and that the legislature intended this dual protection to guard against human or mechanical error. Defendant argues that if the operator makes a mistake in performing requirement (1) on the first test, and is not required to repeat requirement (1) on the second test, the mistake would affect both tests; and neither the operator nor the person taking the test would be aware of the error. Therefore, the practical result of removing requirement (1) from the second test is a less than thorough testing procedure,

and one that removes the protection afforded the defendant by the legislature.

This argument that the testing regulations do not provide for duplicate sequential tests as required by G.S. 20-139.1(b3)(1) is without merit. General Statute 20-139.1(b3) does not require two chemical analyses but merely requires the testing of at least duplicate sequential breath samples. The purpose of the sequential testing is to insure the accuracy of readings. "Sequential tests are required to minimize the time between tests." *State v. White*, 84 N.C. App. 111, 114, 351 S.E.2d 828, 830, *disc. rev. denied*, 319 N.C. 409, 354 S.E.2d 887 (1987). The sequential testing is also designed to assure that factors outside the control of both the State and the defendant do not affect the result. *Id.* Shutting down the instrument, adding a new ampul, and restarting from the beginning would not accomplish either of these purposes.

[2] Defendant next argues that use of the words "as soon as feasible" in Regulation .0336 is not time specific as required by G.S. 20-139.1(b3)(1). This argument is also without merit.

This Court has considered the question of specific time requirements with regard to breathalyzer model 2000 which is controlled by Regulation .0346. *State v. Lockwood*, 78 N.C. App. 205, 336 S.E.2d 678 (1985). In *Lockwood*, the Court held that Regulation .0346 "designates a specific time, which is at the reappearance of the words 'blow sample,' for the collection of the second breath sample." *Id.* at 207-08, 336 S.E.2d at 679. Even though the words "as soon as feasible" were not directly at issue in *Lockwood, supra*, this Court noted with approval that those words were utilized for third and subsequent samples using the 2000 model as well. *Id.* at 207, 336 S.E.2d at 679. In our view, the same principle is appropriate in the instant case.

Regulation .0336 provides a check list of procedures that must be followed to insure accuracy of test results. At trial, the expert on breathalyzer theory and operation testified that if a check list is followed, the test result will be accurate. The chemical analyst who administered the test to defendant testified that he followed the check list. By using the words "as soon as feasible," the Regulation requires the operator to obtain a breath sample as soon as he can follow the check list. At the same time, this standard provides the operator with the flexibility needed to assure that the check list is carefully followed. The use of the words "as soon

as feasible" in substance meets the requirements of G.S. 20-139.1(b3)(1).

[3] Defendant next argues that by adopting the regulations, the Commission has created three different classes of persons:

(1) those individuals whose first test result is .20 or more who do receive a duplicate test as required by statute because the breathalyzer operator is required to perform procedures (1) through (10) in the first as well as the second test;

(2) those individuals whose first test result is .19 or less who do not receive a duplicate test in that Regulation .0336 only requires that procedures (2) through (10) be repeated on the second test, which does not allow the full or complete procedure to be followed as in the administering of the first breathalyzer test; and

(3) those individuals whose first test result is between .19 and .20, who are not mentioned by the regulation.

Defendant contends that the Commission has altered and added to G.S. 20-139.1(b3) by creating these three different classes of persons under the regulations. These classifications, according to defendant, are invalid, as they are contrary to the meaning and language of G.S. 20-139.1(b3).

As a preliminary matter, defendant's contention that the regulations provide no procedures for those persons whose first test result is between 0.19 and 0.20 is without merit. The trial judge found, based on competent evidence, that there was no gap regarding test results between 0.19 and 0.20, since the final result is rounded off to the lower reading measured in one hundredths. Therefore, there can be no final test result between 0.19 and 0.20. See N.C. Admin. Code tit. 10, r. 51B.0354 (1987).

Defendant also contends that the different classifications within the regulations are unconstitutional because they deny equal protection of the law in that under Regulation .0336, defendants charged with the same offense of driving while impaired, although facing the same outcome if convicted, receive different treatment regarding the test procedures. Defendant argues that because his initial test result was less than 0.19, he had two breath samples run through one ampul, and then measured, whereas a defendant with

a breathalyzer reading of 0.20 or more on the first test gets a fresh ampul for each test.

"A statute is not subject to the equal protection clause of the fourteenth amendment of the United States Constitution or article 1 § 19 of the North Carolina Constitution unless it creates a classification between different groups of people." *State v. Howren*, 312 N.C. 454, 457, 323 S.E.2d 335, 337 (1984).

In this case no classification between different groups has been created. All individuals arrested for driving while impaired who are tested under the model 900 breathalyzer are given the same initial test to determine blood-alcohol content. The regulations merely treat the same group of people in a different way depending on the results of this first test. This classification is not of the type that can be considered a denial of equal protection.

Moreover, even if the different procedures followed when initial test results differ did create classifications subject to the equal protection clause, Regulation .0336 is not unconstitutional. The legislature may make classifications and distinctions in the application of laws provided they are reasonable, just and not arbitrary. *Motley v. Board of Barber Examiners*, 228 N.C. 337, 342-43, 45 S.E.2d 550, 553 (1947). Legislative bodies may distinguish, select, and classify objects of legislation and they may make different regulations for different classes. Equal protection will not be offended if the basis for classification is practicality. *Mobile Home Sales v. Tomlinson*, 276 N.C. 661, 667, 174 S.E.2d 542, 547 (1970).

In the instant case, the distinction between the two groups is not arbitrary. The distinctions are based on the scientific theory of the breathalyzer, and as such are not capricious, arbitrary or unjust. On account of chemical changes which occur during the testing of a breath sample, the ampul must be changed when the first reading is 0.20 or more in order to assure reliability of the test results. *See* Watts, *Some Observations on Police-Administered Tests for Intoxication*, 45 N.C.L. Rev. 34, 62, 64-66 n.92 (1966-67). Therefore, the regulations do not amount to a denial of equal protection.

[4] In his second assignment of error defendant argues that the trial court erred in failing to certify the defendant's witness, Jonathan Pharr, as an expert. Mr. Pharr, a chemistry professor at Craven Community College, was tendered by defendant as an expert in

biochemistry and spectrophotometry. After voir dire, the court denied the tender of the witness as an expert.

The North Carolina Rules of Evidence provide, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." G.S. 8C-1, Rule 702. Whether a witness is qualified as an expert is considered "a question of fact, the determination of which is ordinarily within the exclusive province of the trial court." *State v. Goodwin*, 320 N.C. 147, 150, 357 S.E.2d 639, 641 (1987).

On voir dire Mr. Pharr admitted he had never run a breathalyzer test. Mr. Pharr knew in general about spectrophotometry, the study of light absorption through a special light meter. Since the breathalyzer is a type of light measuring device, Mr. Pharr intended to testify regarding inaccuracies that could result from an improperly given breathalyzer examination. Specifically, the witness intended to testify concerning the effect of a smudge on the vial. However, Mr. Pharr had not conducted, nor was he aware of, any scientific experimentation with the breathalyzer to substantiate that a smudge on the vial would affect the accuracy of the reading. Moreover, there was no evidence in the record that the breathalyzer test was administered improperly, and all parties stipulated that the chemical analysis of defendant's breath was conducted in accordance with the regulations. Therefore, the decision of the trial judge to deny expert status to Mr. Pharr was not reversible error.

[5] Defendant's third assignment of error is that the trial court erred by requiring the defendant to state his reasons for a demonstration in court. Defendant argues that this deprived him of the right to confront the witnesses against him and forewarned the witness of his defense strategy. Defendant requested that the chemical analyst be allowed to demonstrate for the jury how he inserted an ampul into the breathalyzer. The purpose of the demonstration was to show that the analyst had to touch the ampul in such a way that he left smudge marks and fingerprints on the ampul. Shortly after defendant gave his reasons for the demonstration, the breathalyzer operator stated that he needed to get a paper towel before attempting the demonstration.

Defendant contends that the operator's response suggests that he was forewarned and that the trial judge's ruling is analogous

to a judicial admonition to the witness wherein the witness changes his testimony to comply with the judge's interpretation of the facts. In the instant case, there was no evidence presented or offer of proof that a smudge would affect a breathalyzer reading. In fact, the State's expert testified that a properly balanced breathalyzer would not be affected by a smudge. This assignment of error is without merit and is, therefore, overruled.

[6] Defendant's fourth assignment of error is that the trial judge committed error by instructing the jury on the offense of driving while impaired and in failing to provide the jury with defendant's requested two-pronged verdict. Defendant contends that this failure by the trial court violated defendant's right to a trial by jury and a unanimous jury verdict. We disagree.

Defendant tendered possible verdicts to the court which would have allowed the jury to find him guilty of impaired driving by (i) driving while under the influence of an impairing substance; and/or (ii) by driving with an alcohol concentration of 0.10 or more; or (iii) not guilty of either statutory charge. The trial court rejected defendant's requested verdicts, and submitted two possible verdicts to the jury of guilty or not guilty. The trial court instructed the jury as follows:

> So I charge that if you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant drove a vehicle on a highway within this state and that when he did so he was under the influence of an impairing substance or had consumed sufficient alcohol that at any time relevant after the driving the defendant had an alcohol concentration of 0.10 or more, it would be your duty to return a verdict of guilty of impaired driving.

The trial court also instructed the jury that the State had the burden of proving the defendant guilty beyond a reasonable doubt and defined "reasonable doubt" for them.

General Statute 20-138.1(a) provides that a person commits the offense of impaired driving if he drives (i) under the influence of an impairing substance or (ii) with an alcohol concentration of 0.10 or more at any relevant time after the driving. In State v. Coker, 312 N.C. 432, 323 S.E.2d 343 (1984), our Supreme Court discussed the two prongs as follows:

This arrangement supports our conclusion that the acts of driving while under the influence of an impairing substance and driving with an alcohol concentration of .10 are two separate, independent and distinct ways by which one can commit the single *offense* of driving while impaired. Since we must presume that the legislature did not act in vain but instead acted with care, deliberation and the full knowledge of prior and existing law, we interpret N.C.G.S. 20-138.1 as creating one offense which may be proved by either or both theories detailed in N.C.G.S. 20-138.1(a)(1) & (2).

*Id.* at 440, 323 S.E.2d at 349 (emphasis in original).

Defendant relies on *State v. Britt*, 93 N.C. App. 126, 377 S.E.2d 79 (1989), in support of his argument that the instruction violated the unanimity requirement. *Britt* was overruled, however, in the Supreme Court's recent decision in *State v. Hartness*, 326 N.C. 561, 391 S.E.2d 177 (1990), on the basis that under the statute, "the crime of indecent liberties is a single offense which may be proved by evidence of the commission of any one of a number of acts." *Id.* at 567, 391 S.E.2d at 180. Applying the *Hartness* analysis to the single offense of DWI proscribed in G.S. 20-138.1(a), we hold that the trial court did not err in instructing the jury.

**[7]** Defendant's fifth and final assignment of error is that the trial court committed reversible error in denying defendant's requested jury instructions.

With regard to requested jury instructions, the law is clear:

The trial court is not required to give a requested instruction in the exact language of the request; however, when the request is correct in law and supported by the evidence in the case, the court must give the instructions in substance. . . .

*State v. Puckett*, 54 N.C. App. 576, 581, 284 S.E.2d 326, 329 (1981) (citations omitted).

In the instant case, three of the defendant's requested jury instructions were denied. The first related to the defendant's 0.11 breathalyzer result. It provided that "no legal presumption attaches to the results of a breathalyzer test. You, members of the jury, are still at liberty to acquit the defendant if you find that his alcohol concentration was not proven to be .10 or more . . . beyond a reasonable doubt." The second denied instruction was that "our

STATE v. GARVICK

[98 N.C. App. 556 (1990)]

courts recognize the defendant's right to offer . . . witnesses as to his condition after his arrest . . . in his defense." The third and final denied instruction was "that it is not unlawful in North Carolina for an individual to drive a vehicle with the odor of alcohol on his breath."

In order for the defendant to show error, he must show that the requested instructions were not given in substance and that substantial evidence supported the omitted instructions. *State v. White*, 77 N.C. App. 45, 52, 334 S.E.2d 786, 792, *cert. denied*, 315 N.C. 189, 337 S.E.2d 864 (1985). Here, the court instructed the jury, in accordance with the Pattern Jury Instructions, that they must be convinced beyond a reasonable doubt that the defendant had an alcohol concentration of 0.10 or more. This is the substance of the first and third request. The second request, that the courts recognize defendant's right to offer evidence, was unnecessary since the court instructed the jury on the burden of proof and that they were to consider all of the evidence. Thus, the trial court did not commit reversible error by failing to give defendant's specific instructions in form since they were given in substance.

No error.

Judge EAGLES concurs.

Judge GREENE concurs in part and dissents in part.

Judge GREENE concurring in part and dissenting in part.

While I agree with much in the majority opinion, I believe the defendant is entitled to a new trial on the grounds that the jury's verdict of guilty is ambiguous and therefore fatally defective.

The jury rendered their verdict on the following verdict form:

We the jury unanimously find the defendant, George Alan Garvick:

Check (X) either:

1.  __X__  Guilty of impaired driving; or

2.  _____  Not guilty

STATE v. GARVICK

[98 N.C. App. 556 (1990)]

At trial the defendant objected to the verdict form used by the trial court and requested the trial court submit the following verdict form:

> We, the twelve members of the jury, unanimously find the defendant to be:

_____ 1. Guilty of impaired driving

_____    (a) by driving while under the influence of an impairing substance

and/or

_____    (b) by having consumed sufficient alcohol that at any relevant time after the driving the defendant had an alcohol concentration of 0.10 or more.

or

_____    Not guilty.

This court has approved a verdict form similar to that submitted by the defendant since it avoids the risk of a nonunanimous verdict. *See State v. Harrell*, 96 N.C. App. 426, 433, 386 S.E.2d 103, 106 (1989).

It is impossible to determine from the jury's verdict whether the jurors unanimously thought the defendant guilty of impaired driving because of N.C.G.S. § 20-138.1(a)(1), because they unanimously thought the defendant guilty of N.C.G.S. § 20-138.1(a)(2), or because some jurors thought the defendant guilty because of § 20-138.1(a)(1) and some because of § 20-138.1(a)(2). Unless twelve jurors agree to one set of facts, unanimity has not occurred. Accordingly, I believe the defendant has been deprived of his constitutional right to be convicted by an unanimous jury. N.C. Const. art. I, § 24.