STATE OF NORTH CAROLINA v. RICHARD ANDERSON SMART, JR.

No. COA08-714

(Filed 17 March 2009)

**Evidence— officer's testimony—horizontal gaze nystagmus test—admissibility**

The trial court did not err by admitting an officer's testimony about the horizontal gaze nystagmus (HGN) test in a prosecution for impaired driving. An amendment to N.C.G.S. § 8C-1, Rule 702(a1) obviates the need for the State to prove that HGN testing is sufficiently reliable. Given that this officer was questioned at length about her skill, experience and training in administering the test, and that defendant's argument on appeal concentrated on the method of proof rather than the officer's qualifications, the court did not err in admitting the testimony.

Appeal by defendant from judgment entered 6 December 2007 by Judge W. Osmond Smith, III, in Wake County Superior Court. Heard in the Court of Appeals 3 December 2008.

*Robert W. Ewing for defendant.*

*Attorney General Roy Cooper, by Assistant Attorney General Jess D. Mekeel, for the State.*

ELMORE, Judge.

Richard Anderson Smart, Jr. (defendant), appeals from a judgment sentencing him to a minimum of twenty-seven months' and a maximum of thirty-two months' imprisonment pursuant to his conviction for one count of habitual impaired driving; one count of resisting, delaying, or obstructing an officer; and one count of reckless driving.

I.

On 14 May 2007, at 1:00 am, Officer Tiffany Silsbee of the Cary Police Department was on patrol in Cary when she saw two vehicles traveling down East Chatham Street. The following information comes from Officer Silsbee's testimony at trial.

Officer Silsbee observed that the second car, which was being driven by defendant, was traveling over the posted speed limit and was very close to the rear bumper of the vehicle in front of it. Defendant's car at times came so close to the vehicle in front of it that the two nearly collided; in addition, Officer Silsbee observed defendant's brake lights come on several times and weave across two traffic lanes behind the other vehicle. Officer Silsbee activated her blue lights and pulled both cars over; all three pulled into the parking lot of a closed gas station.

Officer Silsbee first spoke briefly to the driver of the front vehicle, who told her defendant had been tailgating him. Officer Silsbee then approached defendant, who was still in the driver's seat of his car; she noticed a "very strong" odor of alcohol and defendant's eyes were half open, red, and glassy. She also noted that there was a male passenger in the passenger seat.

Officer Silsbee asked defendant why he had been speeding and tailgating the other vehicle, at which point he "became very upset." After she told him she had observed his driving, he made several excuses for the way he had been driving, said it was not intentional, and said he was "very sorry." Officer Silsbee then asked defendant whether he had been drinking, and he replied first that "he had had a few," but quickly changed his answer to "I've had none tonight."

When Officer Silsbee asked defendant to exit his vehicle, he had to use his car door to pull himself to a standing position, then stumbled as he emerged from the car. She noted a "very obvious and very strong" odor of alcohol emanating from defendant at that point.

Officer Silsbee then asked defendant for his driver's license; after some fumbling with his wallet, he produced an ID card. When she began speaking with defendant again about his driving, "he began to get very upset and angry once again"; feeling that it might be dangerous to proceed by herself, she called for back-up.

Officer Silsbee then began conducting field sobriety tests, beginning with the breathalyzer. She twice explained to defendant that, if he had not had anything to drink, the result would be a double zero. By this time, her back-up had arrived. Defendant initially agreed to submit to a breathalyzer test, but once Officer Silsbee retrieved the equipment to administer the test from her patrol car, he refused to take the test.

Officer Silsbee then administered the horizontal gaze nystagmus test (HGN), which involves moving an object—usually a pen or finger—horizontally in front of the subject's eyes while observing whether the movement of the subject's pupil is "jerky," indicating intoxication, or smooth. Defendant had trouble following Officer Silsbee's finger without moving his head, despite repeated instructions to keep his head still. Eventually Officer Silsbee was able to administer both the HGN and the vertical gaze nystagmus (VGN) test, which is the same as the HGN but with vertical movement of the object. She observed several indicators that defendant was under the influence of "an impairing substance."

Officer Silsbee next initiated the walk-and-turn sobriety test, which begins with the subject walking a straight line, heel to toe, with the subject's arms at his sides. Officer Silsbee walked defendant over to a line marking a parking spot where, after several requests to do so, defendant got into an appropriate position to begin the test. When Officer Silsbee then tried to give defendant instructions on how to perform the test, "he told me that he knew, he knew, and he began walking" before she could give any instructions. Defendant held up his arms to balance himself while walking, did not walk heel to toe, did not walk on the line, and took approximately five steps before stopping.

Defendant then turned and began to walk rapidly toward his car. When Officer Silsbee called him to come back, he stated that he would not take the test and continued walking toward his car. Officer Silsbee and the officer who had arrived as back-up then subdued defendant and placed him under arrest.

On 11 September 2007, defendant was indicted on charges stemming from the incident; on 3 December 2007, defendant was found guilty on three of those charges, including resisting, delaying, or obstructing a public officer; reckless driving; and driving while impaired. Having a prior record level of IV, defendant was sentenced to twenty-seven months' to thirty-two months' imprisonment. Defendant now appeals.

II.

Although defendant initially phrases his sole argument on appeal in terms of Officer Silsbee's qualifications as an expert witness, he in fact specifies that his argument pertains to whether the officer's "method of proof"—that is, the nystagmus testing—is sufficiently reliable as a basis for expert testimony. This argument is without merit.

We note first that, although Officer Silsbee conducted both vertical and horizontal gaze nystagmus testing, only defendant's argument as to the latter is properly before this Court. Defendant failed to properly preserve the issue of vertical gaze nystagmus testing for review; he made only a general objection at trial not sufficient to preserve the error, see *State v. Parker*, 140 N.C. App. 169, 183, 539 S.E.2d 656, 665 (2000), and in his brief to this Court mentions it only in passing. As such, only defendant's arguments as to the HGN are before us.

Rule 702 of the North Carolina Rules of Evidence governs the testimony of expert witnesses; that rule states: "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." N.C. Gen. Stat. § 8C-1, Rule 702(a) (2007). Per Rule 702(a1), an expert witness

qualified under subsection (a) of this section and with proper foundation, may give expert testimony solely on the issue of impairment and not on the issue of specific alcohol concentration level relating to the following: (1) The results of a Horizontal

Gaze Nystagmus (HGN) Test when the test is administered by a person who has successfully completed training in HGN.

N.C. Gen. Stat. § 8C-1, Rule 702(a1) (2007).[1]

Before an expert witness may offer an opinion under Rule 702(a) of the North Carolina Rules of Evidence, the trial court must first make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is sufficiently valid[.]" *State v. Goode*, 341 N.C. 513, 527, 461 S.E.2d 631, 639 (1995).

Before Officer Silsbee testified as to her administration of the HGN test, defense counsel subjected her to extensive voir dire regarding her training and her experience administrating the test. She also testified as to the accuracy rate of the test in assessing intoxication as measured by various studies.

Defendant's argument virtually ignores the above amendment to Rule 702(a1) specifying both the admissibility of HGN testimony and the admissibility of expert testimony on that test by "a person who has successfully completed training in HGN." We interpret this amendment to Rule 702(a1) as obviating the need for the State to prove that the HGN testing method is sufficiently reliable. Defendant would have us interpret this subsection to state that a person testifying as to the HGN test must be an expert on it, an interpretation which would make the subsection nothing more than an example of the requirements of subsection (a), which as mentioned above states that "a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." N.C. Gen. Stat. § 8C-1, Rule 702(a) (2007). Given that (1) Officer Silsbee was questioned at length as to her skill, experience, and training in administering the HGN test and (2) defendant's argument to this Court concentrates entirely on the method of proof rather than Officer Silsbee's qualifications, we find that the trial court did not err in admitting her testimony.

No error.

Judges HUNTER, Robert C., and CALABRIA concur.

---

1. This subsection was added by amendment and applies to all hearings held on or after 21 August 2006; defendant was indicted and tried in late 2007. *See* 2006 N.C. Sess. Laws 253, § 6; 2007 N.C. Sess. Laws 493, § 33.