ELMORE, Judge.
 

 *184
 
 William Edward Godwin, III (defendant), appeals his conviction for driving while impaired following a jury trial in superior court. The
 
 *185
 
 question for decision is whether Rule 702(a1) of the North Carolina Rules of Evidence requires a witness to be qualified as an expert before he may testify to the issue of impairment related to HGN test results. We hold that it does.
 

 I. Background
 

 The State's evidence at trial tended to show the following: On 18 January 2011, at approximately 10:14 p.m., Daniel Kennerly, an officer with the Charlotte Mecklenburg Police Department, observed defendant driving fourteen miles per hour over the posted speed limit and executed a traffic stop. When he approached the vehicle, Officer Kennerly noticed that defendant's eyes were red and glassy, and he detected a strong odor of alcohol coming from defendant's breath. Officer Kennerly asked defendant where he was coming from and how much alcohol, if any, he had consumed that evening. In response, defendant stated that he had just left a restaurant where he had consumed three beers. Officer Kennerly then asked defendant to step out of his vehicle and began an investigation for impaired driving.
 

 As part of his investigation, Officer Kennerly administered three field sobriety tests:
 

 *36
 
 the Horizontal Gaze Nystagmus (HGN) test, the walk-and-turn, and the one-leg stand. He observed four out of six possible indicators of impairment during the HGN test, six out of eight possible indicators during the walk-and-turn, and two out of four possible indicators during the one-leg stand. At that time, Officer Kennerly placed defendant under arrest for driving while impaired and transported him to the Mecklenburg County Sheriff's Office's Intoximeter site to perform a EC/IR II breath test. The results of the Intoximeter showed that defendant's blood-alcohol concentration was .08.
 

 On 20 December 2011, defendant was convicted in Mecklenburg County District Court of driving while impaired. He appealed to superior court, and the matter came to trial at the 12 November 2013 Criminal Session of the Superior Court for Mecklenburg County. At trial, defendant objected to Officer Kennerly's HGN testimony, arguing that the officer had to be qualified as an expert under Rule 702 of the North Carolina Rules of Evidence before such testimony could be admitted. Over defendant's objections, the trial court allowed Officer Kennerly to testify, based on his training and experience, as to his administration of the HGN test, the indicators of impairment, and his opinion regarding defendant's impairment based on the indicators which he observed. At the conclusion of the trial, the jury found defendant guilty of driving while impaired. Defendant gave notice of appeal in open court.
 

 *186
 

 II. Discussion
 

 Defendant first argues that the trial court erred in admitting Officer Kennerly's testimony regarding the HGN test results. Specifically, defendant maintains that Rule 702(a1) requires a party offering testimony about the results of an HGN test to do so through a properly qualified witness who has been accepted as an expert by the trial court. Defendant contends, therefore, that in overruling his objection and allowing Officer Kennerly to offer such testimony as a lay witness, the trial court acted under a misapprehension of the law.
 

 "Issues of statutory construction are questions of law, reviewed de novo on appeal."
 
 McKoy v. McKoy,
 

 202 N.C.App. 509
 
 , 511,
 
 689 S.E.2d 590
 
 , 592 (2010) (citing
 
 Moody v. Sears Roebuck & Co.,
 

 191 N.C.App. 256
 
 , 264,
 
 664 S.E.2d 569
 
 , 575 (2008) ). " 'Under a
 
 de novo
 
 review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal."
 
 State v. Williams,
 

 362 N.C. 628
 
 , 632-33,
 
 669 S.E.2d 290
 
 , 294 (2008) (quoting
 
 In re Greens of Pine Glen Ltd. P'ship,
 

 356 N.C. 642
 
 , 647,
 
 576 S.E.2d 316
 
 , 319 (2003) ).
 

 The North Carolina Supreme Court first addressed the admissibility of HGN evidence in
 
 State v. Helms,
 

 348 N.C. 578
 
 , 580,
 
 504 S.E.2d 293
 
 , 294 (1998). On discretionary review, the Court agreed with our conclusion that "the HGN test does not measure behavior a lay person would commonly associate with intoxication, but rather represents
 
 specialized knowledge that must be presented to the jury by a qualified expert.
 
 "
 
 Id.
 
 at 581,
 
 504 S.E.2d at 295
 
 (emphasis added);
 
 see also
 

 State v. Helms,
 

 127 N.C.App. 375
 
 , 379,
 
 490 S.E.2d 565
 
 , 568 (1997) ("[The HGN test] is based upon a scientific principle that the extent and manner in which one's eye quivers can be a reliable measure of the amount of alcohol one has consumed." (citation omitted)),
 
 rev'd on other grounds,
 

 348 N.C. 578
 
 ,
 
 504 S.E.2d 293
 
 . This meant that under the prior version of Rule 702, the State had to show,
 
 inter alia,
 
 that the methodology underlying the test was "sufficiently reliable,"
 
 State v. Pennington,
 

 327 N.C. 89
 
 , 98,
 
 393 S.E.2d 847
 
 , 852 (1990) (citations omitted), and that it "can be properly applied to the facts in issue,"
 
 State v. Goode,
 

 341 N.C. 513
 
 , 527,
 
 461 S.E.2d 631
 
 , 639 (1995) (citing
 
 Daubert v. Merrell Dow Pharmaceuticals, Inc.,
 

 509 U.S. 579
 
 ,
 
 113 S.Ct. 2786
 
 ,
 
 125 L.Ed.2d 469
 
 (1993) ). Where no evidence was admitted, and no inquiry conducted, as to the reliability of HGN testing, the Court held that it was error to admit an officer's testimony regarding the results of the HGN test administered on the defendant.
 
 Helms,
 

 348 N.C. at 582
 
 ,
 
 504 S.E.2d at 295
 
 .
 

 *187
 
 After
 
 Helms
 
 was decided, the North Carolina General Assembly passed House Bill 1048, which added subsection (a1) to Rule 702. 2006 Sess. Laws ch. 253, § 6. Rule 702(a1) provides, in pertinent part, as follows:
 

 *37
 
 (a1) A witness, qualified under subsection (a) of this section and with proper foundation, may give expert testimony solely on the issue of impairment and not on the issue of specific alcohol concentration level relating to the following:
 

 (1) The results of a Horizontal Gaze Nystagmus (HGN) Test when the test is administered by a person who has successfully completed training in HGN.
 

 N.C. Gen.Stat. § 8C-1, Rule 702(a1) (2015). The first sentence of this subsection contemplates that testimonial evidence concerning HGN test results be offered by an expert witness. Although the prior version of Rule 702(a) was still in effect when subsection (a1) was added, the bases on which a witness may be qualified as an expert are the same under the current version. Rule 702(a), as amended, provides as follows:
 

 (a) If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue,
 
 a witness qualified as an expert by knowledge, skill, experience, training, or education,
 
 may testify thereto in the form of an opinion, or otherwise, if all of the following apply:
 

 (1) The testimony is based upon sufficient facts or data.
 

 (2) The testimony is the product of reliable principles and methods.
 

 (3) The witness has applied the principles and methods reliably to the facts of the case.
 

 N.C. Gen.Stat. § 8C-1, Rule 702(a) (2015) (emphasis added);
 
 cf.
 
 N.C. Gen.Stat. § 8C-1, Rule 702(a) (2009) ("[A] witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion.").
 

 In accordance with
 
 Helms,
 
 therefore, Rule 702(a1) requires that before a witness can testify as to the results of an HGN test, he must be "qualified as an expert by knowledge, skill, experience, training, or
 
 *188
 
 education."
 
 See
 

 Helms,
 

 348 N.C. at 580-81
 
 ,
 
 504 S.E.2d at 294-95
 
 . If the witness is so qualified and "proper foundation" is established, the witness may "give
 
 expert testimony
 
 " as to the HGN test results, subject to the additional limitations in subsection (a1). N.C. Gen.Stat. § 8C-1, Rule 702(a1) (emphasis added). Namely, the expert witness may testify "solely on the issue of impairment and
 
 not
 
 on the issue of specific alcohol concentration," and the HGN test must have been "administered by a person who has successfully completed training in HGN."
 

 Id.
 

 (emphasis added).
 

 In the case
 
 sub judice,
 
 although Officer Kennerly completed a training course in DWI detection and standardized field sobriety tests, there was never a formal offer by the State to tender him as an expert witness. In fact, after conducting its own
 
 voir dire,
 
 the trial court rejected defendant's contention that Officer Kennerly must be qualified as an expert before testifying as to the results of the HGN test:
 

 THE COURT: I will allow this officer to testify that he administered the HGN test, the walk-and-turn test, and the one-legged test. He will be allowed to testify as to the indicators of impairment he observed of this defendant in giving these tests. Anything else?
 

 MR. POWERS: I'd ask the Court to note my exception. Is the Court disqualifying him as an expert on the HGN?
 

 THE COURT: I'm not-he doesn't have to be qualified as an expert. I'm not going to make that requirement.
 

 Thereafter, over defendant's objection, Officer Kennerly testified that he "observed four out of six" possible clues during the HGN test, which "indicates a probability that the person could be impaired as a result of the consumption of alcohol." Furthermore, based on his interactions with defendant and defendant's performance on all of the field sobriety tests, including the HGN test, Officer Kennerly opined that defendant's "mental and physical faculties were appreciably impaired as a result of the consumption of some impairing substance, that substance in this case being alcohol." Our application of Rule 702(a1) to the facts of this case leads us to conclude that the trial court erred in allowing a witness who had not been qualified as an expert under Rule 702(a) to testify as to the issue of impairment based on the HGN test results.
 

 *38
 
 The State, relying on our decision in
 
 State v. Smart,
 

 195 N.C.App. 752
 
 ,
 
 674 S.E.2d 684
 
 (2009),
 
 disc. review denied,
 

 363 N.C. 810
 
 ,
 
 692 S.E.2d 874
 
 (2010), nevertheless argues for an interpretation of Rule 702(a1) that
 
 *189
 
 would not require an arresting officer who administered the HGN test to be qualified as an expert before testifying as to the HGN test results and the issue of impairment related thereto. Unlike this case, however, the arresting officer in
 
 Smart
 
 was qualified as an expert under Rule 702 before she testified as to her administration of the test.
 
 Id.
 
 at 755-56,
 
 674 S.E.2d at 685-86
 
 . And although the defendant's argument, as it was initially phrased, attacked the officer's qualifications as an expert witness, the defendant's actual challenge went toward the testimony itself: "[The defendant] in fact specifies that his argument pertains to whether the officer's 'method of proof'-that is, the nystagmus testing-is sufficiently reliable as a basis for expert testimony."
 

 Id.
 

 at 755
 
 ,
 
 674 S.E.2d at
 
 685 ;
 
 see also
 

 Goode,
 

 341 N.C. at 529
 
 ,
 
 461 S.E.2d at 640
 
 ("Once the trial court has determined that the method of proof is sufficiently reliable as an area for expert testimony, the next level of inquiry is whether the witness ... is qualified as an expert to apply this method to the specific facts of the case.") (citing N.C. Gen.Stat. § 8C-1, Rule 702 (1992) ). Addressing this argument, we explained that, at least under the prior version of Rule 702(a), before admitting expert opinion testimony the trial court had to make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is sufficiently valid."
 

 Id.
 

 at 756
 
 ,
 
 674 S.E.2d at 686
 
 (quoting
 
 Goode,
 

 341 N.C. at 527
 
 ,
 
 461 S.E.2d at
 
 639 );
 
 see also
 
 N.C. Gen.Stat. § 8-C1, Rule 104(a) (2015) ("Preliminary questions concerning the qualification of a person to be a witness ... or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b)."). At that time, we interpreted subsection (a1) "as obviating the need for the State to prove that the HGN testing method is sufficiently reliable."
 

 Id.
 

 Our holding in
 
 Smart
 
 went no further, and it has no application here. While some may even question whether
 
 Smart
 
 survives the amendment to Rule 702(a), that issue is not the one presently before us.
 

 Having concluded that the trial court erred in admitting Officer Kennerly's testimony, we must now determine whether the error was prejudicial so as to warrant a new trial. "In order to establish prejudicial error in the erroneous admission of the HGN evidence, defendant must show only that had the error in question not been committed, a reasonable possibility exists that a different result would have been reached at trial."
 
 Helms,
 

 348 N.C. at 583
 
 ,
 
 504 S.E.2d at
 
 296 (citing N.C. Gen.Stat. § 15A-1443(a) (1997) ).
 

 The remaining evidence presented at trial shows the following: (1) Officer Kennerly stopped defendant for speeding; (2) when Officer Kennerly initiated the stop, defendant activated his turn signal, pulled onto the next side street, and came to a stop at roadside in a safe
 
 *190
 
 location; (3) defendant was not weaving, and he made no sharp or sudden turns to avoid the traffic stop; (4) two experts testified that they would have expected to see some indicators of impairment which defendant did not exhibit while operating the vehicle; (5) defendant had no problem retrieving his license or registration; (6) defendant did not tilt his head away from Officer Kennerly or otherwise try to avoid contact with him; (7) Officer Kennerly noticed that defendant's eyes were red and glassy, and he smelled a "strong odor of an alcoholic beverage coming from his breath"; (8) one expert testified that "the odor of alcohol is simply an indicator of presence of alcohol" and that there is "no basis for an opinion that correlates the strength of an odor to ... blood alcohol concentration in the body"; (9) defendant told Officer Kennerly that he had just left a restaurant where he had consumed three beers that evening; (10) when asked to step out of the vehicle, defendant removed his seatbelt without difficulty, he did not use the doorframe or the vehicle for support while exiting, and he did not stagger or sway once he was out of the vehicle; (11) Officer Kennerly observed six out of eight possible clues during the walk-and-turn test, and two out of four possible clues on the one-leg stand test; (12) defendant repeatedly told Officer Kennerly that he had to use the restroom, and two experts agreed that defendant's need to urinate could have adversely
 
 *39
 
 affected his performance on the tests; (13) one of the experts, who reviewed the video from Officer Kennerly's dash camera, testified that Officer Kennerly should not have counted three of the six clues he observed during the walk-and-turn test; that the steep grade of the road where defendant performed the one-leg stand could have adversely affected defendant's performance on the test; and that the presence of traffic on the narrow road where the tests were administered, along with the cold weather that evening, could also have affected defendant's performance on the tests; (14) Helen Godwin, defendant's mother, testified that when she saw defendant at the police station, his eyes were not red or glassy, he did not smell of alcohol, his speech was normal, and she did not believe he was impaired; (15) after being placed under arrest and transported to the Intoximeter site, defendant registered a .08 on the Intoximeter. Based on the foregoing, particularly the conflicting evidence regarding defendant's performance on the other field sobriety tests, we conclude a reasonable possibility exists that, had the HGN test results not been admitted, a different result would have been reached at trial.
 

 B. Jury Instructions
 

 Defendant also contends that trial court erred in denying his request for the following jury instruction concerning the results of the Intoximeter:
 

 *191
 
 A chemical analysis of defendant's breath obtained from an EC/IR-II, which shows an alcohol concentration of 0.08 or more grams of alcohol per 210 liters of breath, is deemed sufficient to prove defendant's alcohol concentration. However, such chemical analysis does not compel you to so find beyond a reasonable doubt. You are still at liberty to consider the credibility and/or to give such chemical analysis when considering whether the defendant's guilt has been proven beyond a reasonable doubt.
 

 According to defendant, the requested instruction was necessary to inform the jury that the Intoximeter results were sufficient to support a finding of impaired driving but did not compel such a finding beyond a reasonable doubt. By charging the jury using Pattern Jury Instruction 270.20A, defendant claims the trial court impressed upon the jury that it could not consider evidence which showed that defendant was not impaired.
 

 "When a defendant requests a special jury instruction, 'the trial court is not required to give [the] requested instruction in the exact language of the request. However, when the request is correct in law and supported by the evidence in the case, the court must give the instruction in substance.' "
 
 State v. Beck,
 

 233 N.C.App. 168
 
 , 171,
 
 756 S.E.2d 80
 
 , 82 (alteration in original) (quoting
 
 State v. Monk,
 

 291 N.C. 37
 
 , 54,
 
 229 S.E.2d 163
 
 , 174 (1976) ),
 
 writ of supersedeas denied, disc. review denied,
 

 367 N.C. 508
 
 ,
 
 759 S.E.2d 94
 
 (2014). To establish error, therefore, the defendant "must show that the requested instructions were not given in substance and that substantial evidence supported the omitted instructions."
 
 State v. Garvick,
 

 98 N.C.App. 556
 
 , 568,
 
 392 S.E.2d 115
 
 , 122 (citing
 
 State v. White,
 

 77 N.C.App. 45
 
 , 52,
 
 334 S.E.2d 786
 
 , 792,
 
 cert. denied,
 

 315 N.C. 189
 
 ,
 
 337 S.E.2d 864
 
 (1985) ),
 
 aff'd per curiam,
 

 327 N.C. 627
 
 ,
 
 398 S.E.2d 330
 
 (1990). "The defendant also bears the burden of showing that the jury was misled or misinformed by the instructions given."
 
 Beck,
 

 233 N.C.App. at 171
 
 ,
 
 756 S.E.2d at
 
 82 (citing
 
 State v. Blizzard,
 

 169 N.C.App. 285
 
 , 297,
 
 610 S.E.2d 245
 
 , 253 (2005) ).
 

 As defendant acknowledges in his brief, we have previously rejected his argument concerning Pattern Jury Instruction 270.20A. In
 
 Beck,
 
 we concluded that
 

 the trial court's use of the pattern jury instruction [270.20A] informed the jury that in order to return a verdict of guilty, it must be convinced beyond a reasonable doubt that Defendant's alcohol concentration was .08 or
 
 *192
 
 more. This instruction informed the jury, in substance, that it was not compelled to return a guilty verdict based simply on the chemical analysis results showing a .10 alcohol concentration.
 

 Beck,
 

 233 N.C.App. at 171-72
 
 ,
 
 756 S.E.2d at 83
 
 . The trial court also "informed the jury that it possessed the authority to determine the weight of any evidence offered to show that Defendant was-or was not-impaired."
 

 Id.
 

 at 172
 
 ,
 
 756 S.E.2d at 83
 
 (citations omitted).
 

 *40
 
 Despite defendant's attempt to distinguish
 
 Beck
 
 from the case
 
 sub judice,
 
 we are unable to do so. Accordingly, we reject defendant's second argument.
 
 See
 

 In re Civil Penalty,
 

 324 N.C. 373
 
 , 384,
 
 379 S.E.2d 30
 
 , 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court.").
 

 III. Conclusion
 

 Although the trial court's jury instructions were proper, we conclude that the trial court erred in admitting Officer Kennerly's testimony regarding the HGN test results and the issue of defendant's impairment related thereto, without requiring him to be qualified as an expert under Rule 702(a). Based on the remaining evidence presented at trial, we further conclude a reasonable possibility exists that, had the error not occurred, the jury would have reached a different result. Defendant is entitled to a new trial.
 

 NEW TRIAL.
 

 Judges STROUD and DIETZ concur.