*884
 
 STEPHENS, Judge.
 

 *444
 
 Defendant appeals from the judgment entered upon his conviction of driving while impaired. Defendant contends that the trial court committed plain error in admitting testimony from the law enforcement officer who arrested him regarding the officer's interpretation of the results of a specific roadside sobriety test. Although we agree with Defendant that the challenged testimony was admitted in error, we conclude that, in light of the overwhelming unchallenged evidence of Defendant's impairment, he was not prejudiced by admission of the challenged testimony. Accordingly, Defendant is not entitled to a new trial.
 

 Factual and Procedural Background
 

 The evidence at trial tended to show the following: This case arises from an early-morning encounter on 29 June 2014 between Defendant James Howard Killian and Corporal Jonathan Ray of the Weaverville Police Department. As Ray was completing an unrelated traffic stop, Killian approached him, complaining that his moped had been "run off the road" by a law enforcement vehicle. Ray immediately detected a strong odor of alcohol emanating from Killian and asked Killian whether he had been drinking and whether he would submit to an Alco-Sensor breath test. Killian agreed to the breath test. The test registered positive for the presence of alcohol. Killian acknowledged having consumed two beers, and Ray asked him to submit to standard field sobriety testing. Killian agreed.
 

 The next test Ray administered was the Horizontal Gaze Nystagmus ("HGN") test. During this test, Ray observed the movement of Killian's eyes for involuntary jerking that may be caused by consumption of alcohol and/or drugs. Ray testified that Killian exhibited signs of possible impairment. Ray next asked Killian to complete the "walk and turn" test, which Killian was unable to complete successfully. Killian declined to attempt the one-leg-stand test, citing pain and swelling in his knee. Ray then asked Killian to repeat the Alco-Sensor breath test, which again
 
 *445
 
 gave a positive result. On the basis of Ray's observation of Killlian's slurred speech and glassy, red eyes, the odor of alcohol emanating from Killian, the two positive breath test results, the HGN test results indicating impairment, and Killian's failure to successfully complete the walk and turn test, in conjunction with his admission to consuming alcohol earlier, Ray determined that he had probable cause to arrest Killian for impaired driving. The entire encounter was recorded by Ray's dashboard camera and was played for the jury at trial.
 

 As Ray took Killian into custody, Killian requested medical attention for his injured knee. Ray called emergency medical services to examine Killian's knee, after which Ray transported Killian to a local hospital for X rays of the knee. At the hospital, Ray read Killian his rights regarding submission of a blood sample to test for alcohol or other impairment. Killian signed a form acknowledging his understanding of his legal rights and submitted a blood sample. When tested, that sample indicated a blood alcohol content ("BAC") of 0.10 milligrams of alcohol per 100 milliliters, a level indicating legal impairment.
 
 [1]
 
 Once Killian was released from the hospital into Ray's custody, Killian was transported to the Buncombe County Detention Facility.
 

 Killian was cited for driving while impaired and failure to comply with a driver's license restriction. On 11 June 2015, Killian was found guilty in Buncombe County District Court of driving while impaired. On the following day, Killian filed his notice of appeal to superior court. On 2 July 2015, Killian filed several motions in the trial court, including a motion to exclude Ray's testimony about field sobriety tests he administered, on the basis that Ray was not qualified as an expert in the interpretation of the results of such tests. Those motions were denied by the superior court, and Killian's case came on for trial at the 6 July 2015 criminal session of Buncombe County Superior Court, the Honorable Alan Z. Thornburg, Judge presiding. At trial, Killian did not object to Ray's testimony about his administration of the HGN
 

 *885
 
 test and Killian's results. The jury returned a guilty verdict, and the trial court imposed a sentence of 24 months in prison, suspended the sentence, and ordered 24 months of supervised probation. From the judgment imposed upon his conviction, Killian gave notice of appeal in open court.
 

 Discussion
 

 In his sole argument on appeal, Killian contends that the trial court plainly erred in denying his motion to exclude Ray's HGN testimony
 
 *446
 
 and in allowing Ray to testify about the results of the HGN test without qualifying Ray as an expert pursuant to North Carolina Rule of Evidence 702(a). While we agree that admission of the HGN testimony was error, we conclude that the error did not have a probable impact on the jury's verdict.
 

 As Killian acknowledges, because he did not object to the admission of the testimony at trial that he now challenges on appeal, he is entitled only to plain error review.
 

 In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.
 

 N.C.R. App. P. 10(a)(4). Our State's appellate courts may "review unpreserved issues for plain error when they involve either (1) errors in the judge's instructions to the jury, or (2) rulings on the admissibility of evidence."
 
 State v. Gregory
 
 ,
 
 342 N.C. 580
 
 , 584,
 
 467 S.E.2d 28
 
 , 31 (1996) (citations omitted). Plain error arises when the error is "so basic, so prejudicial, so lacking in its elements that justice cannot have been done...."
 
 State v. Odom
 
 ,
 
 307 N.C. 655
 
 , 660,
 
 300 S.E.2d 375
 
 , 378 (1983) (citations and internal quotation marks omitted). "Under the plain error rule, [a] defendant must convince this Court not only that there was error, but that absent the error, the jury
 
 probably
 
 would have reached a different result."
 
 State v. Jordan
 
 ,
 
 333 N.C. 431
 
 , 440,
 
 426 S.E.2d 692
 
 , 697 (1993) (citation omitted; emphasis added).
 

 Admission of Ray's testimony about the results of Killian's HGN test was clearly erroneous. North Carolina Rule of Evidence
 

 702(a1) requires that, before a witness can testify as to the results of an HGN test, he must be qualified as an expert by knowledge, skill, experience, training, or education. If the witness is so qualified and proper foundation is established, the witness may give expert testimony as to the HGN test results, subject to the additional limitations in subsection (a1). Namely, the expert witness may testify solely on the issue of impairment and not on the issue of specific alcohol concentration, and the HGN test must have been administered by a person who has successfully completed training in HGN.
 

 *447
 

 State v. Godwin
 
 , --- N.C. App. ----, ----,
 
 786 S.E.2d 34
 
 , 37 (2016) (citations and internal quotation marks omitted),
 
 disc. review allowed
 
 , --- N.C. ----,
 
 793 S.E.2d 220
 
 (2016),
 
 available at
 

 2016 WL 5344499
 
 . Here, it is undisputed that Ray was not tendered as an expert in HGN interpretation and, accordingly, his testimony was not received as an expert in that field. This was error.
 
 See
 

 id.
 

 at ----,
 
 786 S.E.2d at 37
 
 .
 

 Regarding prejudice, Killian argues that, but for the HGN testimony, the jury "likely" or "very likely" would have acquitted him of driving while impaired and, in support of this contention, Killian asserts that the remaining evidence against him was similar to that in
 
 Godwin
 
 , where we granted the defendant a new trial. While the additional, non-HGN evidence in
 
 Godwin
 
 bears some resemblance to that against Killian, the defendant in
 
 Godwin
 
 objected to the admission of the HGN testimony during his trial, thus preserving his right of appellate review on that issue.
 

 Id.
 

 at ----,
 
 786 S.E.2d at 36
 
 . Accordingly, in order to receive a new trial, the defendant in
 
 Godwin
 
 only had to establish that there was a
 
 reasonable possibility
 
 that the HGN testimony altered the jury's verdict.
 
 See
 

 State v. Helms
 
 ,
 
 348 N.C. 578
 
 , 583,
 
 504 S.E.2d 293
 
 , 296 (1998) ("In order to establish prejudicial error in the erroneous admission of ... HGN evidence, [a] defendant must show only that had the error in question not been committed, a reasonable
 
 *886
 
 possibility exists that a different result would have been reached at trial.") (citation omitted). In contrast,
 

 [t]he plain error rule applies only in truly exceptional cases. Before deciding that an error by the trial court amounts to plain error, the appellate court must be convinced that absent the error the jury
 
 probably
 
 would have reached a different verdict. In other words, the appellate court must determine that the error in question
 
 tilted the scales
 
 and caused the jury to reach its verdict convicting the defendant. Therefore, the test for plain error places a
 
 much heavier burden
 
 upon the defendant than that imposed ... upon defendants who have preserved their rights by timely objection. This is so in part at least because the defendant could have prevented any error by making a timely objection.
 

 State v. Walker
 
 ,
 
 316 N.C. 33
 
 , 39,
 
 340 S.E.2d 80
 
 , 83 (1986) (citations and internal quotation marks omitted; emphasis added).
 
 See also
 

 State v. Pate
 
 ,
 
 187 N.C.App. 442
 
 , 448-49,
 
 653 S.E.2d 212
 
 , 217 (2007) ("A
 
 reasonable possibility
 
 of a different result at trial
 
 is a much lower standard
 
 than that a different result
 
 probably
 
 would have been reached
 
 *448
 
 at trial, which is what this Court must find for there to be plain error.") (citations and internal quotation marks omitted; emphasis added).
 

 In light of the "much lower standard" of prejudice applied in
 
 Godwin
 
 ,
 
 see
 

 id.
 

 Killian's contentions that the non-HGN evidence of his impairment was similar to the evidence in that case are inapposite. We have found no precedential case addressing plain error in the admission of HGN testimony.
 
 But see
 

 State v. Jackson
 
 ,
 
 237 N.C.App. 183
 
 ,
 
 767 S.E.2d 149
 
 (2014) (unpublished),
 
 available at
 

 2014 WL 5587011
 
 ,
 
 237 N.C.App. 183
 
 (finding no error in admission of HGN evidence and discussing the overwhelming non-HGN evidence of the defendant's impairment-several traffic infractions, the odor of alcohol and marijuana, bloodshot and glassy eyes, admission by the defendant of having consumed two beers and smoked marijuana earlier in the day, and a blood alcohol level reading of 0.16 on an Intoxilyzer test-before noting in dicta that, even had the admission of the evidence been error, the Court would not have concluded the error likely altered the jury's verdict).
 

 Here, even without the HGN testimony, the jury had before it the following evidence of Killian's impairment: Ray's observations of Killian's slurred speech, glassy, red eyes, and strong odor of alcohol; two positive breath test results; Killian's failure to successfully complete the walk and turn test and inability to attempt the one-leg stand; Killian's admission to having consumed two beers; the blood alcohol test results indicating legal impairment with a BAC of 0.10; and a recording from Ray's dashboard camera of his entire roadside encounter with Killian. In light of this significant evidence of impairment, we are not persuaded that, had Ray's testimony about the HGN test results not been admitted, the jury probably would have reached a different result. In our view, Killian's is not the "truly exceptional case[ ].... [where] the error in question tilted the scales and caused the jury to reach its verdict convicting the defendant."
 
 See
 

 Walker
 
 ,
 
 316 N.C. at 39
 
 ,
 
 340 S.E.2d at 83
 
 (citations and internal quotation marks omitted). Accordingly, he is not entitled to a new trial.
 

 NO PREJUDICIAL ERROR.
 

 Judges BYRANT and DILLON concur.
 

 [1]
 

 A BAC result of 0.08 or above is one way to establish that a defendant has committed the offense of impaired driving.
 
 See
 

 N.C. Gen. Stat. § 20-138.1
 
 (a)(2) (2015).