*643
 
 INMAN, Judge.
 

 *581
 
 Under Rule 702 of the North Carolina Rules of Evidence, a trial court does not err when it admits expert testimony regarding the results of a Horizontal Gaze Nystagmus ("HGN") test without first determining that HGN testing is a product of reliable principles and methods as required by subsection (a)(2).
 

 *582
 
 Jennifer Leigh Younts ("Defendant") appeals from a judgement entered following a jury trial in which she was found guilty of driving while impaired. Defendant argues that the trial court erred by admitting testimony about the results of an HGN test, because the testifying officer did not lay the evidentiary foundation required for expert testimony. Defendant also argues that the trial court erred by not intervening
 
 ex mero motu
 
 when the prosecutor, in closing argument, speculated as to what Defendant's blood alcohol concentration would have been an hour before she was tested. After careful consideration, we hold: (1) that the trial court did not err by admitting HGN evidence without first making a determination as to its reliability and (2) that the trial court did not err in failing to intervene in the prosecutor's closing argument.
 

 Factual and Procedural History
 

 The State's evidence at trial tended to show the following:
 

 On 21 October 2014 at around 6:20 p.m., Myron R. Coffey, of the North Carolina Highway Patrol ("Trooper Coffey") clocked Defendant traveling in a black car at seventy-six miles per hour in a fifty-five mile per hour zone on Interstate Highway 240 near Asheville. Trooper Coffey activated his blue lights and pulled behind Defendant's vehicle. Defendant pulled off to the side of the road onto an exit ramp approximately four-tenths of a mile down the highway.
 

 As Trooper Coffey approached Defendant's vehicle, he noticed "a strong odor of alcohol coming out of the vehicle." Trooper Coffey also noticed Defendant had "red glassy eyes and slurred speech." He asked Defendant if she had had anything to drink that day; she responded affirmatively. Trooper Coffey then asked Defendant to step out of her vehicle to undergo several standardized field sobriety tests.
 

 The first test Trooper Coffey administered was an HGN test. Based on Defendant's results from the HGN test, Trooper Coffey did not "feel like [Defendant's] impairment was anything other than alcohol[,]" and did not administer a Vertical Gaze Nystagmus test. Next, Trooper Coffey had Defendant perform the "walk and turn test." Trooper Coffey noted that Defendant could not keep her balance, could not walk a straight line, missed the heel to toe steps, used her arms incorrectly, did not take the proper number of steps, and could not keep her foot planted on the turn. Defendant then performed the "one-leg stand" test. She was unable to balance on one foot, switched feet mid-test, and almost fell over. Trooper Coffey was "looking for a total of four clues, and [Defendant] showed all four clues on [the one-leg stand] test."
 

 *583
 
 Trooper Coffey administered one final test, a portable breath test, which was positive for the presence of alcohol. Trooper Coffey sought to repeat the portable breath test to ensure accuracy, but Defendant refused to cooperate. Trooper Coffey concluded that Defendant was impaired and placed her under arrest. At the Buncombe County Detention Facility, at approximately 6:42 p.m., Defendant consented to take the Intoxilyzer breath test. Defendant invoked her right to have a witness present; however, no witness appeared within thirty minutes, and Trooper Coffey administered the Intoxilyzer breath test at 7:18 p.m. The results of this breath test indicated a blood alcohol concentration of .06.
 

 Following the Intoxilyzer test, Defendant was charged with driving while impaired. Following a trial in Buncombe County District Court on 18 August 2015, Defendant was convicted of driving while impaired and immediately filed a notice of appeal to superior court.
 

 Pending trial
 
 de novo
 
 in superior court, Defendant filed a motion
 
 in limine
 
 to exclude,
 
 inter alia
 
 , expert testimony regarding the results of the HGN test. Defendant requested a
 
 voir dire
 
 hearing of Trooper Coffey
 
 *644
 
 to determine the admissibility of his HGN testimony. Following the impaneling of the jury but outside the jury's presence, the trial court allowed the
 
 voir dire
 
 of Trooper Coffey.
 

 In the
 
 voir dire
 
 hearing, Trooper Coffey testified about his qualifications to administer the standardized field sobriety tests, including the HGN test. He stated he received 40 hours of training, and continued refresher courses every two years. Trooper Coffey explained the HGN test, how it is administered, and what he looks for throughout the test. He admitted he had not independently researched HGN testing and that he did not know the rate of error. He acknowledged that causes other than alcohol impairment can affect the results of an HGN test. The trial court initially allowed Defendant's motion to exclude Trooper Coffey's testimony about the HGN test results because the State had not presented testimony "regarding his administration of the test or how these methods were applied[.]"
 

 The State requested a reexamination of Trooper Coffey in the
 
 voir dire
 
 hearing to lay the proper foundation. Following the additional testimony, the trial court denied Defendant's motion to exclude the HGN evidence, finding:
 

 [B]ased upon this trooper's observations, his proper training, experience, and education, skill, knowledge, and the fact that he was properly qualified, he has been certified
 
 *584
 
 in administering the horizontal gaze nystagmus test; and he administered-he has testified as to how he administered the test, and he administered the test according to his training in this particular instance and recorded those test results accurately and has testified to all of these ... pursuant to 702(a) that this scientific, technical, or specialized knowledge will assist the trier of fact in understanding the evidence or determine the facts in issue in this case, the issue of impairment, exclusively the issue of impairment; and the witness is qualified as an expert by knowledge, skill, experience, training, or education and may testify thereto in the form of an opinion and being qualified under 702(a) of this chapter and the proper foundation having been laid as indicated by the Court.
 

 Before the jury, in addition to testifying about his experience and training in administering HGN tests, Trooper Coffey testified about his qualifications and experience in administering other field sobriety tests, as well as the events surrounding Defendant's arrest.
 

 The trial court instructed the jury that Defendant could be found guilty of impaired driving based either upon having an appreciable impairment or having a blood alcohol concentration equal to or greater than a statutory measure:
 

 The Defendant is under the influence of an impairing substance when the Defendant has taken or consumed a sufficient quantity of that impairing substance to cause the Defendant to lose the normal control of the Defendant's bodily or mental faculties or both to such an extent that there is an appreciable impairment of either or both of these faculties or the Defendant had consumed sufficient alcohol that at any relevant time after the driving, the Defendant had an alcohol concentration of .08 or more grams of alcohol per 210 liters of breath.
 

 The jury returned a verdict finding Defendant guilty of driving while impaired. The trial court sentenced Defendant as a Level V offender to sixty days of imprisonment to be suspended conditioned upon the successful completion of twelve months of supervised probation, twenty-four hours of community service, alcohol abstinence while on probation, and payment of fines and costs. Defendant gave oral notice of appeal in open court.
 

 *585
 

 Analysis
 

 I. HGN Testing
 

 Defendant argues that the trial court misinterpreted Rule 702(a) of the North Carolina Rules of Evidence, its subsequent amendments, and the recent case precedent in denying Defendant's motion to exclude Trooper Coffey's testimony about the HGN test results. Specifically, Defendant asserts that the trial court failed to require Trooper Coffey to establish the reliability of the HGN test prior to admitting the testimony. We disagree.
 

 *645
 

 A. Standard of Review
 

 Because Defendant raises this issue within the framework of statutory construction, we review the issue
 
 de novo
 
 .
 
 Cornett v. Watauga Surgical Group, P.A.
 
 ,
 
 194 N.C. App. 490
 
 , 493,
 
 669 S.E.2d 805
 
 , 807 (2008) ("Where the plaintiff contends the trial court's decision is based on an incorrect reading and interpretation of the rule governing admissibility of expert testimony, the standard of review on appeal is
 
 de novo
 
 .") (citations omitted). "Under a
 
 de novo
 
 review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal."
 
 State v. Williams
 
 ,
 
 362 N.C. 628
 
 , 632-33,
 
 669 S.E.2d 290
 
 , 294 (2008) (internal quotation marks and citations omitted).
 

 B. Rule 702 Requirements
 

 At the heart of this case is whether the recently amended Rule 702(a)
 
 [1]
 
 requires the State to lay a proper foundation regarding the reliability of an HGN test before an officer or other qualified expert is allowed to testify about the results of the particular test; we hold it does not.
 

 The North Carolina Supreme Court first addressed the admissibility of HGN evidence in
 
 State v. Helms
 
 , and held that HGN testing "represents specialized knowledge that must be presented to the jury by a qualified expert."
 
 348 N.C. 578
 
 , 581,
 
 504 S.E.2d 293
 
 , 295 (1998). At the time, the North Carolina Rules of Evidence-Rule 702 -dictated that "new scientific methods of proof [were] admissible at trial if the method [was] sufficiently reliable."
 

 Id.
 

 (quoting
 
 State v. Pennington
 
 ,
 
 327 N.C. 89
 
 , 98,
 
 393 S.E.2d 847
 
 , 852 (1990) ) (internal quotation marks omitted). In reference to this standard, the Supreme Court stated that "[i]n general, when no specific precedent exists, scientifically accepted reliability justifies
 
 *586
 
 admission of the testimony of qualified witnesses, and such reliability may be found either by judicial notice or from the testimony of scientists who are expert in the subject matter, or by a combination of the two."
 
 State v. Bullard
 
 ,
 
 312 N.C. 129
 
 , 148,
 
 322 S.E.2d 370
 
 , 381 (1984) (citation omitted). Ultimately, the Court in
 
 Helms
 
 held that the trial court erred in admitting an officer's testimony regarding the results of an HGN test because there was no indication in the record of evidence admitted, or inquiry conducted, regarding the reliability of HGN testing.
 
 Helms
 
 ,
 
 348 N.C. at 582
 
 ,
 
 504 S.E.2d at 295
 
 .
 

 Since
 
 Helms
 
 , Rule 702 has undergone several amendments relevant to our analysis today. In 2006, the General Assembly added subsection (a1) to Rule 702. 2006 N.C. Sess. Laws ch. 253, § 6. Rule 702(a1) provides in pertinent part:
 

 (a1) A witness, qualified under subsection (a) of this section and with proper foundation, may give expert testimony solely on the issue of impairment and not on the issue of specific alcohol concentration level relating to the following:
 

 (1) The results of a Horizontal Gaze Nystagmus (HGN) Test when the test is administered by a person who has successfully completed training in HGN.
 

 N.C. Gen. Stat. § 8C-1, Rule 702(a1) (2007). At the time the amendment took effect, subsection (a) provided:
 

 (a) If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine
 
 *646
 
 a fact in issue, a witness qualified as an expert
 
 *587
 
 by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion.
 

 N.C. Gen. Stat. § 8C-1, Rule 702(a) (2007). Based on this standard for qualifying an expert, our Court interpreted the Rule 702(a1) amendment to have the effect of "obviating the need for the State to prove that the HGN testing method is sufficiently reliable."
 
 State v. Smart
 
 ,
 
 195 N.C. App. 752
 
 , 756,
 
 674 S.E.2d 684
 
 , 686 (2009).
 

 In 2011, however, the General Assembly altered the requirements of Rule 702(a) for the qualification of an expert as follows:
 

 (a) If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an
 
 opinion
 
 .
 

 opinion, or otherwise, if all of the following apply
 
 :
 

 (1) The testimony is based upon sufficient facts or data.
 

 (2) The testimony is the product of reliable principles and methods.
 

 (3) The witness has applied the principles and methods reliably to the facts of the case.
 

 2011 N.C. Sess. Laws ch. 283, § 1.3 (emphasis added). In
 
 State v. McGrady
 
 ,
 
 368 N.C. 880
 
 , 884,
 
 787 S.E.2d 1
 
 , 5 (2016), the Supreme Court confirmed that this most recent amendment of Rule 702 adopted the federal standard for expert witness testimony articulated in the
 
 Daubert
 
 line of cases.
 
 [2]
 
 "These three prongs [under Rule 702(a) ] together constitute the reliability inquiry discussed in
 
 Daubert
 
 , [
 
 General Electric Company v.
 
 ]
 
 Joiner
 
 [
 
 522 U.S. 136
 
 ,
 
 118 S.Ct. 512
 
 ,
 
 139 L.Ed.2d 508
 
 (1997) ], and
 
 Kumho
 
 . The primary focus of the inquiry is on the reliability of the witness's principles and methodology, not on the conclusions that they generate."
 
 McGrady
 
 ,
 
 368 N.C. at 890
 
 ,
 
 787 S.E.2d at 9
 
 (internal quotation marks and citations omitted). "The precise nature of the reliability inquiry will vary from case to case depending on the nature of the proposed testimony. In each
 
 *588
 
 case the trial court has discretion in determining how to address the three prongs of the reliability test."
 

 Id.
 

 (citation omitted).
 

 The issue before us is whether
 
 Smart
 
 's conclusion that Rule 702(a1) obviated the need to prove HGN testing's reliability is still good law following our State's adoption of the federal reliability test under
 
 Daubert
 
 . This issue has been recognized in previous cases, but has not been squarely resolved.
 
 State v. Godwin
 
 , --- N.C. App. ----, ----,
 
 786 S.E.2d 34
 
 , 38 (2016),
 
 aff'd in part and rev'd in part by
 
 , --- N.C. ----,
 
 800 S.E.2d 47
 
 (2017) ("While some may even question whether
 
 Smart
 
 survives the amendment to Rule 702(a), that issue is not the one presently before us.").
 

 In its recent decision in
 
 Godwin
 
 , the Supreme Court construed subsections (a) and (a1) together and reasoned that the General Assembly sought to "allow testimony from an individual who has successfully completed training in HGN and meets the criteria set forth in Rule 702(a)...."
 

 Id.
 

 at ----,
 
 800 S.E.2d at 50
 
 (internal quotation marks and citations omitted). Although the trial court in
 
 Godwin
 
 made no finding on the record that the testifying officer qualified as an expert, the Supreme Court held that "the trial court implicitly found that [an officer] was qualified to give expert testimony [on the results of an HGN test,]"
 

 id.
 

 at ----,
 
 800 S.E.2d at 54
 
 , because the record contained "sufficient evidence upon which the trial court could have based an explicit finding that the witness was an expert,"
 

 id.
 

 at ----,
 
 800 S.E.2d at 51
 
 . This evidence was in the form of the officer's testimony about his "knowledge, skill, experience,
 
 *647
 
 training, [and] education[,]" and the trial court's establishment that "[the officer's] testimony met the three-pronged test of reliability pursuant to the amended rule...."
 

 Id.
 

 at ----,
 
 800 S.E.2d at 51-52
 
 . The Supreme Court further reasoned that
 

 [t]he trial court conducted its own voir dire of [the officer], which elicited testimony that the HGN test he administered to defendant on the day in question was given in accordance with the standards set by the [National Highway Traffic Safety Administration], and that those standards were derived from the results of a specific scientific study. Additionally, the trial court's voir dire confirmed that the principles and methods utilized in the HGN test were found to be reliable indicators of impairment, and that [the officer] applied those principles and methods to [the] defendant in this case.
 

 Id.
 

 at ----,
 
 800 S.E.2d at 52
 
 . The Supreme Court relied on the above inquiry to distinguish
 
 Godwin
 
 from the Court's ruling in
 
 Helms
 
 :
 

 *589
 
 [A]lthough the officer in
 
 Helms
 
 testified that he had taken a forty hour training course in the use of the HGN test, the State presented no evidence regarding-and the court conducted no inquiry into-the reliability of the HGN test. We also noted in
 
 Helms
 
 that nothing in the record of the case indicated that the trial court took judicial notice of the reliability of the HGN test....
 
 This scenario plainly contrasts with the present case in which the trial court made a finding of reliability of the HGN test and an implicit finding that [the officer] was qualified as an expert
 
 .
 

 Id.
 

 at ----,
 
 800 S.E.2d at 52-53
 
 (emphasis added).
 

 Here, much like in
 
 Helms
 
 , defense counsel objected to the HGN evidence at trial because the State failed to present evidence of-and the trial court conducted no inquiry into-the reliability of the HGN test. The only testimony relating to the reliability of the HGN test was presented on cross-examination:
 

 DEFENSE COUNSEL: Are you published in HGN?
 

 OFFICER: What do you mean published?
 

 DEFENSE COUNSEL: Have you published any kind of research or studies or anything like that? Are you familiar with any?
 

 OFFICER: I haven't done any independent search.
 

 DEFENSE COUNSEL: Have you-are you familiar with any publications that have been subjected to peer review?
 

 OFFICER: No.
 

 DEFENSE COUNSEL: You mentioned-what causes HGN?
 

 OFFICER: There's certain types of nystagmus. But the type I'm looking for is horizontal gaze nystagmus. And basically the only thing that will cause that is the impairment of alcohol.
 

 ...
 

 OFFICER: [Reading from the NHTSA training manual] Although this type of nystagmus is most accurate for determining alcohol impairment, its presence may also be-I'm sorry, its presence may also indicate use of certain other drugs.
 

 *590
 
 DEFENSE COUNSEL: So alcohol is not the only thing that causes horizontal gaze nystagmus; correct?
 

 OFFICER: Correct.
 

 ...
 

 STATE's COUNSEL: And based on your observations of the Defendant, what is the significance of the six out of six clues?
 

 OFFICER: There was a few studies done, I believe in the 1980's that stated that if you show six out of six clues, that your impairment of alcohol is above a .08. the percentage-actually, if you're showing four out of six, you're an 08. Six out of six clues, your concentration could be higher.
 

 ...
 

 DEFENSE COUNSEL: What's the potential rate of error for HGN test?
 

 OFFICER: Like I said, I'm not sure what the rate of error would be.
 

 DEFENSE COUNSEL: Have you actually read like the studies you're talking about in the 80's?
 

 OFFICER: When I received the training, they went over the studies, but I don't
 
 *648
 
 have the exact percentages. I don't have that written down.
 

 DEFENSE COUNSEL: I know that they went over this. I've actually done it myself, the NITSA [sic] training, and they refer to the studies as well; but have you read them, yourself, or did you just do the NISTA [sic] training?
 

 OFFICER: I have read them during the training.
 

 DEFENSE COUNSEL: What are the names of the studies?
 

 OFFICER: I'm sorry?
 

 DEFENSE COUNSEL: What are the names of those studies?
 

 OFFICER: I'm not sure.
 

 This evidence standing alone is insufficient to establish, in accordance with the statutory criteria, the HGN test as a reliable indicator of impairment.
 

 *591
 
 Furthermore, a close examination of the trial court's decision demonstrates that, while the trial court made determinations as to the whether the testimony was "based upon sufficient facts or data[,]" N.C. Gen. Stat. § 8C-1, Rule 702(a)(1), and whether Trooper Coffey "applied the principles and methods reliably to the facts of the case[,]" N.C. Gen. Stat. § 8C-1, Rule 702(a)(3), it did not take judicial notice of-or hear evidence on-the reliability of the HGN test. Rather, the record reflects that trial court did not consider whether Trooper Coffey's testimony met the second prong of the reliability test-
 
 i.e.
 
 whether the "testimony is the product of reliable principles and methods[,]" N.C. Gen. Stat. § 8C-1, Rule 702(a)(2).
 

 Although defense counsel emphasized the lack of testimony regarding the reliability of the HGN test, the trial court initially allowed Defendant's motion to exclude the testimony for a different reason, noting that "I don't think there's been any testimony at this time regarding [Trooper Coffey's] administration of the test or how these methods were applied[.]" Following additional testimony discussing Trooper Coffey's application of the principles and methods to the administration of the HGN test conducted on Defendant and arguments of counsel, the trial court found that
 

 [Trooper Coffey] is qualified as an expert by knowledge, skill, experience, training, or education and may testify thereto in the form of an opinion and being qualified under 702(a) of this chapter and the proper foundation having been laid as indicated by the Court.
 

 The additional testimony did not, however, address the reliability of the HGN test, and a strict reading of Rule 702, without more, would suggest that the trial court erred by allowing Trooper Coffey's testimony without taking judicial notice of-or conducting an inquiry into-the reliability of the HGN test. However, we reach a different decision on this issue in light of
 
 Godwin
 
 .
 

 The Supreme Court ultimately concluded in
 
 Godwin
 
 that "with the 2006 amendment to Rule 702, our General Assembly clearly signaled that the results of the HGN test are sufficiently reliable to be admitted into the courts of this State."
 
 Godwin
 
 , --- N.C. at ----,
 
 800 S.E.2d at 53
 
 . This holding is similar to this Court's holding in
 
 Smart
 
 that the 2006 amendment to Rule 702 "obviat[ed] the need for the State to prove that the HGN testing method is sufficiently reliable."
 
 Smart
 
 ,
 
 195 N.C. App. at 756
 
 ,
 
 674 S.E.2d at 686
 
 . Accordingly, it appears that the ruling of
 
 Smart
 
 has survived the General Assembly's 2011 amendment designating our State
 
 *592
 
 a
 
 Daubert
 
 State. Because the
 
 Godwin
 
 decision applied the most recent amendments to Rule 702 and is consistent with previous decisions eliminating the need to prove HGN testimony "[a]s the product of reliable principles and methods[,]" N.C. Gen. Stat. § 8C-1, Rule 702(a)(2), we are compelled to hold that the trial court did not err by admitting Trooper Coffey's testimony without first making such a determination.
 

 II. Speculation in Closing Argument
 

 Defendant next argues that the trial court erred by not intervening
 
 ex mero motu
 
 when the prosecutor speculated in the State's closing argument about what Defendant's breathalyzer test result would have been an hour before she was actually tested. In light of ample evidence and argument by the State that Defendant was guilty based upon a theory
 
 *649
 
 of appreciable impairment, independent of her blood alcohol concentration, we disagree.
 

 "The standard of review for alleged errors in closing arguments 'depends on whether there was a timely objection made or overruled, or whether no objection was made and defendant contends that the trial court should have intervened
 
 ex mero motu
 
 .' "
 
 State v. Chappelle
 
 ,
 
 193 N.C. App. 313
 
 , 325,
 
 667 S.E.2d 327
 
 , 334 (2008) (quoting
 
 State v. Walters
 
 ,
 
 357 N.C. 68
 
 , 101,
 
 588 S.E.2d 344
 
 , 364 (2003) ). "Where no objection was made, this Court reviews the remarks for gross impropriety."
 
 Id.
 
 at 325,
 
 667 S.E.2d at 334
 
 (citations omitted).
 

 In determining whether there was a gross impropriety, the remarks must be such that "they rendered the trial and conviction fundamentally unfair."
 
 State v.
 

 Allen
 
 ,
 
 360 N.C. 297
 
 , 306-07,
 
 626 S.E.2d 271
 
 , 280 (2006). "[T]his Court considers the context in which the remarks were made, as well as their brevity relative to the closing argument as a whole[.]"
 
 State v. Taylor
 
 ,
 
 362 N.C. 514
 
 , 536,
 
 669 S.E.2d 239
 
 , 259 (2008) (internal quotation marks and citations omitted).
 

 In closing argument, the prosecutor stated: "The Defendant blew a .06 one hour after driving. Blew a .06. What was she an hour before that? If you had that giant instrument in the trunk of his car, what would it have been[ ] an hour before that?" Defendant contends this statement amounted to grossly improper speculation in violation of N.C. Gen. Stat. § 15A-1230(a). Our review of the record reveals that, when viewed in context, the prosecutor's statement does not constitute a "gross impropriety." The prosecutor urged the jury to disregard Defendant's blood alcohol concentration, and instead focus on Defendant's failure to successfully complete Trooper Coffey's standardized field sobriety tests. The prosecutor emphasized to jurors that they could find Defendant
 
 *593
 
 guilty without regard to her blood alcohol concentration. Accordingly, we hold that the prosecutor's statements were not so grossly improper that the trial court erred by failing to intervene
 
 ex mero motu
 
 .
 

 Conclusion
 

 Under the newly amended Rule 702(a), a trial court need not inquire about the reliability of HGN evidence before admitting an officer or other qualified expert to testify about the results of a particular HGN test. Additionally, the trial court did not err by failing to intervene
 
 ex mero motu
 
 in the prosecutor's closing argument.
 

 NO ERROR.
 

 Judges BRYANT and STROUD concur.
 

 [1]
 

 Rule 702(a) was amended effective 1 October 2011. Because Defendant was charged with an offense occurring on 21 October 2014, the amended Rule applies to this case.
 

 [2]
 

 The North Carolina Supreme Court recognized in
 
 McGrady
 
 that
 
 Daubert v. Merrell Dow Pharm., Inc.
 
 ,
 
 509 U.S. 579
 
 ,
 
 113 S.Ct. 2786
 
 ,
 
 125 L.Ed.2d 469
 
 (1993), and its progeny
 

 [a]rticulated five factors from a nonexhaustive list that can have a bearing on reliability: (1) "whether a theory or technique ... can be (and has been) tested"; (2) "whether the theory or technique has been subjected to peer review and publication"; (3) the theory or technique's "known or potential rate of error"; (4) "the existence and maintenance of standards controlling the technique's operation"; and (5) whether the theory or technique has achieved "general acceptance" in its field.
 
 Daubert
 
 ,
 
 509 U.S. at 593-94
 
 , [
 
 113 S.Ct. at 2796-2797
 
 ,
 
 125 L.Ed.2d at 482-83
 
 ]. When a trial court considers testimony based on "technical or other specialized knowledge," N.C. R. Evid. 702(a), it should likewise focus on the reliability of that testimony,
 
 Kumho
 
 [
 
 Tire Co., Ltd. v. Carmichael
 
 ], 526 U.S. [137,] 147-49, [
 
 119 S.Ct. 1167
 
 , 1173-1174,
 
 143 L.Ed.2d 238
 
 , 249-51 (1999) ]. The trial court should consider the factors articulated in
 
 Daubert
 
 when "they are reasonable measures of the reliability of expert testimony."
 
 Id.
 
 at 152, [
 
 119 S.Ct. at 1176
 
 ,
 
 143 L.Ed.2d at 252
 
 ]. Those factors are part of a "flexible" inquiry,
 
 Daubert
 
 ,
 
 509 U.S. at 594
 
 , [
 
 113 S.Ct. at 2797
 
 ,
 
 125 L.Ed.2d at 483-84
 
 ], so they do not form "a definitive checklist or test,"
 

 id.
 

 at 593
 
 , [
 
 113 S.Ct. at 2796-97
 
 ,
 
 125 L.Ed.2d at 482
 
 ]. And the trial court is free to consider other factors that may help assess reliability given "the nature of the issue, the expert's particular expertise, and the subject of his testimony."
 
 Kumho
 
 , 526 U.S. at 150, [
 
 119 S.Ct. at 1175
 
 ,
 
 143 L.Ed.2d at 251-52
 
 ].
 

 McGrady
 
 ,
 
 368 N.C. at 890-91
 
 ,
 
 787 S.E.2d at 9-10
 
 .