IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-899

Filed 16 July 2025

Forsyth County, No. 20CRS054619-330

STATE OF NORTH CAROLINA

v.

RICHARD ALLEN MOORE

Appeal by Defendant from judgment entered 1 May 2024 by Judge Martin B. McGee in Forsyth County Superior Court. Heard in the Court of Appeals 20 May 2025.

*Attorney General Jeff Jackson, by Assistant Attorney General Steven C. Wilson, Jr., for the State.*

*Drew Nelson for the Defendant.*

WOOD, Judge.

Richard Allen Moore ("Defendant") appeals from the judgment entered following a jury verdict finding him guilty of second-degree murder and felony death by motor vehicle. On appeal, Defendant raises two issues, whether the trial court erred (1) by allowing the State's Drug Recognition Expert ("DRE") to testify and (2) by allowing the State to introduce Defendant's driving record without a Rule 404(b) analysis. After careful review of the record, we find Defendant received a fair trial, free of prejudicial error.

## I.    Factual and Procedural Background

On 28 April 2020, Defendant was driving northbound on North Liberty Street in Winston-Salem, North Carolina.  The street consists of four lanes, two going each direction, with a turning lane separating the inside lanes.  Defendant was driving a Jeep and hauling a 3-wheel motorcycle on a homemade flat-bed trailer.  Defendant was observed speeding at an estimated 60 to 70 miles per hour in a 35 mile per hour zone, as well as driving erratically by crossing into lanes on either side of his own.

Defendant's Jeep veered into the southbound lane, headed directly toward the Honda Pilot driven by Lisa Hathaway ("Hathaway"), and the two vehicles collided before Hathaway could take evasive action.  Holly Hinson ("Hinson") was the front seat passenger in Hathaway's vehicle at the time of the collision.

While first responders attempted to treat Hinson, Defendant got out of his Jeep and walked to the curb.  Witnesses described Defendant as "shaken" but not hurt.  One witness reported Defendant stated, "I'm thinking I'm having a heart attack."  Defendant did not say anything else and eventually was transported to Baptist Hospital.  Hinson died at the scene from multiple blunt force injuries.

At the hospital Defendant received a comprehensive medical evaluation and was administered full alcohol and drug screenings.  The evaluation found no head, neck, or chest injuries and no evidence of spinal trauma or cardiac distress.  Defendant was reported to be "groggy."  Initially, Defendant was so groggy that the physician could not complete a full review because "he wasn't fully with it."  However,

Defendant markedly improved over the next four hours and was able to stand up and move around. According to the treating physician, absent traumatic injury, Defendant's behavior was consistent with the use of impairing substances. Defendant's urine tested positive for amphetamines, benzodiazepines, and opiates. Defendant's blood was collected and sent to an independent laboratory for testing.

On 7 May 2020, Defendant was arrested on charges of felony death by vehicle, improper towing, driving while impaired, failure to maintain lane control, reckless driving to endanger, and a designated lane violation. On 24 January 2022, Defendant was indicted for felony death by vehicle, and on 15 August 2022, the indictment was amended to include second-degree murder. On 28 November 2022, Defendant's trial on the indicted charges commenced.

Multiple State's witnesses testified at trial. Dr. Iltifat Husain ("Dr. Husain") testified to the results of Defendant's medical evaluation at Baptist Hospital following the collision. Dr. Husain testified Defendant's toxicology tests were positive for amphetamines, benzodiazepines, and opiates. He also noted that benzodiazepines and opiates are "central nervous system depressant(s)" which "would just make you groggy and less responsive" and "kind of in a depressed state." Dr. Husain noted that in his medical opinion, based on Defendant's test results, his constricted pupils, clinical course of improvement over three or four hours, "there was almost certainly some sort of substance on board," most likely opioids.

The State then tendered Corporal M.L. Dime ("Corp. Dime") of the Winston-Salem police department as an expert in horizontal gaze nystagmus ("HGN"). Corp. Dime testified that Defendant's eyes were droopy; he appeared lethargic; his pupils were constricted; his speech was slurred; and he confused details of the accident, stating he had been towing a golf cart rather than a motorcycle. Based on Corp. Dime's education and training he believed his observations were consistent with the use of a narcotic analgesic and questioned Defendant whether he had been prescribed any medication. Defendant answered he had not. Corp. Dime noted Defendant's pupils were constricted but did not note resting nystagmus or jerking of the eyes when attempting to stare straight ahead. Corp. Dime attempted to complete the HGN assessment but was unable to administer it to Defendant in the way it is intended to be administered, with Defendant standing with his feet together and arms at his side, because Defendant was restricted to the bed and was wearing a neck brace. Therefore, Corp. Dime conducted the HGN assessment of Defendant while Defendant was lying down. An HGN assessment has three components: smooth pursuit, maximum deviation, and onset of nystagmus prior to 45 degrees. Corp. Dime was unable to complete the tracking assessment to evaluate smooth pursuit because Defendant kept closing his eyes. He was able to note both maximum deviations and nystagmus prior to 45 degrees, and he testified that because HGN is a progressive test, when maximum deviations and nystagmus prior to 45 degrees are noted, a definite lack of smooth pursuit is indicated. Corp. Dime formed the opinion that

- 4 -

"Defendant had consumed a sufficient amount of some impairing substance to appreciably affect his driving ability."

Officer E.A. Cox ("Officer Cox") of the Winston-Salem police department searched Defendant's Jeep subsequent to the accident. He testified to finding a small plastic bag containing multiple units of three different types of pills during the search. The State placed the bag of pills into evidence.

Alexis Blankenship ("Blankenship"), a forensic chemist and employee for NMS labs in Winston-Salem, testified as a forensic chemistry expert. Blankenship confirmed the pills located during the search of Defendant's Jeep were amphetamines, hydrocodone with acetaminophen, and flualprazolam, a benzodiazepine.

William Schroerder ("Schroerder"), a forensic toxicologist and employee for NMS labs testified as an expert in forensic toxicology. Schroerder testified that Defendant's blood tested positive for opiates and amphetamines, and borderline positive for benzodiazepines. However, he could not determine either the time of consumption or Defendant's degree of impairment at the time of the collision from the test results.

Sergeant James R. Mitchell ("Sergeant Mitchell") of the Winston-Salem police department testified as a crash reconstruction expert. Based on his calculations, Defendant was driving between 61.3 and 73 miles per hour in a 35 mile per hour zone just prior to the crash. Additionally, Sergeant Mitchell testified about traffic citations

generally and how citations are reflected on an individual's driving record before testifying to Defendant's driving record, which documented the citations Defendant had received for accidents and infractions in the past. Defendant objected to the admission of his driving record and requested a Rule 404(b) analysis prior to the evidence being admitted; however, the trial court overruled his objection. Defendant had at least three previous speeding violations on his record.

Sergeant Preston Stringer ("Sergeant Stringer") of the Forsyth County Sheriff's Office testified as a Drug Recognition Expert ("DRE") over Defendant's objection. His testimony was based on his review of the records in the case and hearing the testimony and evidence presented at trial. He explained the effect each identified drug could have on a person and stated in his professional opinion "multiple drug categories [ ] were causing [Defendant's] impairment." Defendant objected to the testimony because Sergeant Stringer had not been called into the case until two years after the incident and his conclusions were based upon video evidence, reports, and testimony, not through live interaction with Defendant at the time of the incident as per DRE protocol.

At the close of the evidence, Defendant made a motion to dismiss for insufficient evidence to prove malice. The trial court denied the motion and sent the issues to the jury.

On 8 December 2022, the jury found Defendant guilty on both counts, felony death by motor vehicle and second-degree murder. After sentencing, Defendant entered oral notice of appeal in open court.

## II.  Analysis

Defendant asserts two arguments on appeal. First, Defendant contends the trial court erred in allowing the Drug-Recognition Expert to testify without determining whether the expert had satisfied the reliability provisions of N.C. Gen. Stat. § 8C-1, Rule 702(a). Second, Defendant contends the trial court erred by allowing the state to introduce Defendant's driving record without first conducting a similarity analysis under N.C. Gen. Stat. § 8C-1, Rule 404(b). We examine each issue in turn.

### A. Drug-Recognition Expert Testimony

Defendant's primary argument against the drug-recognition expert ("DRE") testimony is the trial court's alleged failure to satisfy the reliability provisions of N.C. Gen. Stat. § 8C-1, Rule 702(a). Defendant asserts additional arguments concerning the constitutionality of the testimony under the Due Process Clause of the United States Constitution, as well as the Law of the Land Clause of the North Carolina Constitution. Defendant did not raise either constitutional argument at trial and, "[c]onstitutional issues not raised and passed upon at trial will not be considered for the first time on appeal." *State v. Chapman,* 359 N.C. 328, 354, 611 S.E.2d 794, 815 (2005). Therefore, Defendant has failed to preserve the constitutional issues for

review, and we restrict our review to the statutory issue addressed at the trial court.

> Where the plaintiff contends the trial court's decision is based on an incorrect reading and interpretation of the rule governing admissibility of expert testimony, the standard of review on appeal is *de novo*. Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal.

*State v. Younts*, 254 N.C. App. 581, 585, 803 S.E.2d 641, 645 (2017) (cleaned up).

Defendant contends even when expert testimony is admissible based on N.C. Gen. Stat. § 8C-1, Rule 702(a1), the trial court is still required to qualify the expert based on the requirements of N.C. Gen. Stat. § 8C-1, Rule 702(a), notwithstanding the modifications made pursuant to 2017 N.C. Sess. Laws ch. 212, Part V, § 5.3, eff. June 28, 2017. This appears to be a case of first impression for this Court.

Our legislature has amended N.C. Gen. Stat. § 8C-1, Rule 702 multiple times over the last two decades. In 2006, the statute read in pertinent part:

> (a) If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion.
>
> (a1) A witness, qualified under subsection (a) of this section and with proper foundation, may give expert testimony solely on the issue of impairment and not on the issue of specific alcohol concentration level relating to the following:
>> (1) The results of a Horizontal Gaze Nystagmus (HGN) Test when the test is administered by a person who has successfully completed training in HGN.
>> (2) Whether a person was under the influence of one

or more impairing substances, and the category of such impairing substance or substances. A witness who has received training and holds a current certification as a Drug Recognition Expert, issued by the State Department of Health and Human Services, shall be qualified to give the testimony under this subdivision.

Gen. Stat. § 8C-1, Rule 702 (2006).

In 2011, the statute was amended to ensure the reliability of expert testimony by adding the following three requirements:

(a) If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if all of the following apply:

*(1) The testimony is based upon sufficient facts or data.*
*(2) The testimony is the product of reliable principles and methods.*
*(3) The witness has applied the principles and methods reliably to the facts of the case.*

Gen. Stat. § 8C-1, Rule 702 (2011); *State v. McGrady*, 368 N.C. 880, 892, 787 S.E.2d 1, 10 (2016).

Finally, the statute was most recently updated in 2017 to read:

(a) If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if all of the following apply:

(1) The testimony is based upon sufficient facts or

data.
(2) The testimony is the product of reliable principles and methods.
(3) The witness has applied the principles and methods reliably to the facts of the case.

(a1) *Notwithstanding any other provision of law, a witness* may give expert testimony solely on the issue of impairment and not on the issue of specific alcohol concentration level relating to the following:

(1) The results of a Horizontal Gaze Nystagmus (HGN) Test when the test is administered in accordance with the person's training by a person who has successfully completed training in HGN.
(2) Whether a person was under the influence of one or more impairing substances, and the category of such impairing substance or substances, if the witness holds a current certification as a Drug Recognition Expert, issued by the State Department of Health and Human Services.

N.C. Gen. Stat. § 8C-1, Rule 702 (2017) (emphasis added).

The State argues the 2017 inclusion of "notwithstanding any other provisions of law," entirely eradicates the necessity for expert witnesses to meet the requirements of N.C. Gen. Stat. § 8C-1, Rule 702(a). Accordingly, the State contends since Deputy Stringer possessed a current certification as a DRE, he was free to testify regardless of whether his testimony was based on fact or actually complied with his training as a DRE. We disagree.

"When the language of a statute is clear and without ambiguity, 'there is no room for judicial construction,' and the statute must be given effect in accordance with its plain and definite meaning." *Avco Financial Services v. Isbell*, 67 N.C. App. 341, 343, 312 S.E.2d 707, 708 (1984) (quoting

- 10 -

> *Williams v. Williams*, 299 N.C. 174, 180, 261 S.E.2d 849,
> 854 (1980)). However, if a literal reading of the statutory
> language "yields absurd results. or contravenes clearly
> expressed legislative intent, 'the reason and purpose of the
> law shall control and the strict letter thereof shall be
> disregarded.' " *Id*. (quoting *State v. Barksdale*, 181 N.C.
> 621, 625, 107 S.E. 505, 507 (1921)); see also *Kaminsky v.
> Sebile*, 140 N.C. App. 71, 76, 535 S.E.2d 109, 112–13 (2000).

*Aman v. Nicholson*, 288 N.C. App. 1, 10, 885 S.E.2d 100, 107–08 (2023) (quoting

*Griffith v. North Carolina Dept. of Correction*, 210 N.C. App. 544, 559, 709 S.E.2d

412, 423 (2011)). The contested language, "notwithstanding any other provisions of

law," when applied using plain language and basic grammar, would appear to allow

testimony from a DRE "solely on the issue of impairment" without regard to all other

rules of law, including not only the rules of reliability under 702(a), but also all other

rules of evidence such as relevancy. This would be an absurd result and is

inconsistent with  the summary of the bill, which referred to the "technical correction"

as "remov[ing] the preliminary requirements that the witness be qualified," and does

not comport with the pertinent case law which has consistently held  DRE testimony

is "determined to be reliable and based on sufficient facts and data." SENATE BILL

582: Budget & Agency Technical Corrections, Gillenwater, L. and Ettefagh, D., S.

582, 2017 Gen. Assemb., Additional Sess. (N.C. 2017); *State v. Fincher*, 259 N.C. App.

159, 164-65, 814 S.E.2d 606, 609-10 (2018).

Once categorized as "new scientific methods" admissible only "if the method

was sufficiently reliable," DRE and HGN testimony now are considered routine and

regularly offered. *State v. Younts*, 254 N.C. App. 581, 585-86, 803 S.E.2d 641, 645 (2017). As a result, Rule 702 has undergone several amendments. Our Supreme Court has stated that "with the 2006 amendment to Rule 702, our General Assembly clearly signaled that the results of the HGN test are sufficiently reliable to be admitted into the courts of this State." *State v. Godwin*, 369 N.C. 604, 613, 800 S.E.2d 47, 53 (2017). After the 2011 amendment, our Court expanded on that ruling stating, "it is clear that the General Assembly has indicated its desire that Drug Recognition Evidence . . . be admitted, and that this type of evidence has already been determined to be reliable and based on sufficient facts and data." *Fincher*, 259 N.C. App. at 164-65, 814 S.E.2d at 609-10. In *Younts,* this Court determined pursuant to N.C. Gen. Stat. § 8C-1, Rule 702 (2011), when testimony supports the trial court's determinations that the expert's testimony was "based on sufficient facts or data" and "applied the principles and methods," then the amendment has "obviated the need for the State to prove that the . . . testing method is sufficiently reliable." *Younts*, 254 N.C. App at 591, 803 S.E.2d at 648.

Our case law makes clear that our Courts and the General Assembly have recognized that DRE and HGN testing are based on "sufficient facts or data" and have become sufficiently reliable, eliminating the need for continued review of the basic principles and methods under 702(a)(1) and (2). *See State v. Godwin*, 369 N.C. 604, 613, 800 S.E.2d 47, 53 (2017); *Younts*, 254 N.C. App. at 591, 803 S.E.2d at 648; N.C. Gen. Stat. § 8C-1, Rule 702 (2017). It is beyond reason, however, to construe

"notwithstanding any other provisions of law" to mean the legislature intended to allow testimony outside of the witness' qualification or area of expertise as the State contends a plain reading of N.C. Gen. Stat. § 8C-1, Rule 702 (2017) would allow. Rule 702(a)-(i) contain nearly two dozen requirements to ensure that expert testimony is restricted based on the individual's knowledge and areas of licensure or certification. Under Rule 702(a1)(b), witnesses are required to hold a current State Department of Health and Human Services ("DHHS") issued Drug Recognition Expert certification. Further, DHHS outlines the requirements for DRE certification, and protocols for a DRE evaluation stating:

> The DRE drug evaluation takes approximately one hour to complete. The DRE officer evaluates and assesses the person's appearance and behavior . . . measures and records vital signs and makes precise observations of the person's automatic responses and reactions . . . administers carefully designed psychophysical tests to evaluate the person's judgment, information processing ability, coordination and various other characteristics. . . . The 12 steps of the Drug Evaluation Process include:
> 1. The Breath Alcohol Test
> 2. The Interview of the Arresting Officer
> 3. The Preliminary Examination
> 4. Examination of the Eyes
> 5. Divided Attention Psychophysical Tests
> 6. Examination of Vital Signs
> 7. Dark Room Examinations
> 8. Examination for Muscle Tone
> 9. Examination for Injection Sites
> 10. Suspect's Statements and Other Observations
> 11. Opinions of the Evaluator
> 12. The Toxicological Examination

North Carolina Drug Evaluation & Classification Program, Drug Recognition Expert

(DRE) Requirements.[1]

The statute clearly requires the witness to be certified as a Drug Recognition Expert to testify; therefore, it follows that witness testimony must apply the certification principles and methods reliably to the facts of each case. In addition, in the same statute, the HGN test must be "administered in accordance" with the HGN training. Consequently, we hold N.C. Gen. Stat. § 8C-1, Rule 702(a)(3) must apply.

Deputy Stringer testified that the evaluation was designed to be performed in a standardized and systematic manner with the twelve steps conducted in order, on a live person, shortly after arrest, and in a controlled environment consistent with DRE requirements. He further testified that he had "never [been] trained . . . [to perform an evaluation] in a way where you just relied on information that's given to you by way of video." Nonetheless, the trial court allowed Deputy Stringer to express his expert opinion nearly two years after the incident and without having performed an actual DRE evaluation. Instead, Deputy Stinger based his opinion only on evidence and testimony presented at trial and a review of Defendant's records. This was error and the trial court should have sustained Defendant's objection to Deputy Stinger's testimony as to his opinion on Defendant's impairments pursuant to N.C. Gen. Stat. § 8C-1, Rule 702(a)(3).

---

[1] DRUG EVALUATION AND CLASSIFICATION PROGRAMS DRUG RECOGNITION EXPERT (DRE) REQUIREMENTS, https://www.dph.ncdhhs.gov/programs/chronic-disease-and-injury/forensic-tests-alcohol#DrugEvaluationandClassificationProgramsDECP-588 (visited 5/28/25).

While we conclude the trial court erred in allowing Deputy Stringer's testimony, Defendant bears the burden to prove prejudice. The evidentiary error must be prejudicial to warrant a new trial. *State v. Wilkerson*, 363 N.C. 382, 415, 683 S.E.2d 174, 194 (2009). "To show prejudicial error, a defendant must show that 'there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.'" *State v. Neal,* 267 N.C. App. 442, 459, 833 S.E.2d 367, 379 (2019) (quoting N.C. Gen. Stat. § 15A-1443(a)). Otherwise, "[t]he admission of evidence which is technically inadmissible will be treated as harmless unless prejudice is shown such that a different result *likely* would have ensued had the evidence been excluded." *Id.* (emphasis added).

Here, the State presented overwhelming evidence of Defendant's impairment at trial, separate and apart from Sergeant Stringer's DRE testimony. The uncontested testimony tended to show: witnesses observed Defendant driving his Jeep erratically before crossing lanes and hitting Hathaway's car; just after the accident Defendant was observed to be groggy, and initially unable to comply with testing at the hospital; and the treating physician testified that Defendant was not "fully with it" and described his behavior consistent with the use of impairing substances. His toxicology tests at the hospital were positive for amphetamines, benzodiazepines, and opiates, and these same drugs were found in Defendant's vehicle after the collision. Corp. Dime, an HGN expert, testified that Defendant's

eyes were droopy, he appeared lethargic, his pupils were constricted, his speech was slurred, and he confused details of the accident saying he had been towing a golf cart rather than a motorcycle. Corp. Dime testified he formed the opinion that "Defendant had consumed a sufficient amount of some impairing substance to appreciably effect his driving ability." Ample clear and convincing evidence exists to support any reasonable juror's determination of Defendant's impairment.

As Defendant is unable to prove any reasonable possibility that the outcome of the case would have been different absent the DRE testimony, we hold that despite the error of allowing the DRE testimony, it was nonprejudicial error.

## B. Rule 404(b)

> When the trial court has made findings of fact and conclusions of law to support its 404(b) ruling, . . . we look to whether the evidence supports the findings and whether the findings support the conclusions. We review *de novo* the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b). We then review the trial court's Rule 403 determination for abuse of discretion.

*State v. Beckelheimer*, 366 N.C. 127, 130, 726 S.E.2d 156, 158-59 (2012).

Defendant contends the trial court erred by admitting his driving record into evidence without first conducting a Rule 404(b) similarity analysis. This argument is without merit.

N.C. Gen. Stat. § 8C-1, Rule 404(b) states,

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be

- 16 -

admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2024). "Assessments of the probative value of evidence under Rule 404(b) must be guided by considerations of similarity and temporal proximity." *State v. Maready*, 362 N.C. 614, 624, 669 S.E.2d 564, 570 (2008).

North Carolina courts have long held that evidence of a defendant's prior traffic violations while not admissible to prove character can be relevant to establish the malice element of second-degree murder. *State v. Rollins*, 220 N.C. App. 443, 450, 725 S.E.2d 456, 462 (2012); *State v. Lloyd*, 187 N.C. App. 174, 179-80, 652 S.E.2d 299, 302 (2007).

> [T]he State, in the present case, sought to establish the malice element of second-degree murder by showing that defendant committed an act evidencing a total disregard for human life—i.e., showing "wickedness of disposition," "recklessness of consequences" or "a mind regardless of social duty and deliberately bent on mischief." Evidence of defendant's prior traffic violations—driving 75 mph in a 45 mph zone, 76 mph in a 45 mph zone, 70 mph in a 35 mph zone, and 70 mph in a 55 mph zone—was relevant to establish defendant's "depraved heart" on the night he struck the victims' vehicle while rounding a sharp curve at a speed at least 40 mph over the posted limit.

*State v. Rich*, 351 N.C. 386, 400, 527 S.E.2d 299, 306–07 (2000) (citing *State v. Rich*, 132 N.C. App. 440, 450-51, 512 S.E.2d 441, 449 (1999)).

Regarding Defendant's objection to the admission of his driving record, the court heard arguments from both parties. In support of its position, the State

presented case law concerning the use of a defendant's driving record with similar infractions to prove the malice component of second-degree murder citing to *State v. Locklear*, which held 404(b) "does not require that these prior incidents be exactly the same in order to have probative value." *Locklear*, 159 N.C. App. 588, 595, 583 S.E.2d 726, 731 (2003). In *Locklear,* this Court ruled, a prior conviction for driving while impaired should have alerted the defendant to the hazards of driving while impaired. *Id.*

The record reflects the trial court weighed the considerations of similarity and temporal proximity. The trial court limited temporal proximity by disregarding citations prior to 2015. Although the trial court did not explicitly verbalize the similarity considerations at hand, clearly there is similarity between multiple citations for speeding and Defendant speeding at nearly twice the legal limit prior to hitting Hathaway's vehicle, resulting in Hinson's death. We conclude the trial court did not err in determining the cases to be sufficiently similar and admitting Defendant's driving record.

### III.    Conclusion

For the foregoing reasons, we conclude, based on the totality of the evidence, the trial court's admission of DRE testimony was error but did not constitute prejudicial error. The trial court did not err in determining the admissibility of Defendant's driving record as evidence of malice to prove second-degree murder pursuant to N.C. Gen. Stat. § 8C-1, Rule 404(b). Thus, we hold Defendant received a

fair trial free from prejudicial error.

NO PREJUDICIAL ERROR.

Judge STROUD and Judge CARPENTER concur.